1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MCDERMOTT WILL & EMERY LLP**
Michael B. Kimberly (*pro hac vice* motion to be filed)
Matthew A. Waring (*pro hac vice* motion to be filed)
mkimberly@mwe.com
mwaring@mwe.com
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000

**MCDERMOTT WILL & EMERY LLP**
William P. Donovan, Jr. (SBN 155881)
wdonovan@mwe.com
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
(310) 277-4110

*Attorneys for Proposed Intervenors*

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ALASKA COMMUNITY ACTION ON TOXICS, et al.,<br><br>        Plaintiffs,<br><br>      v.<br><br>COUNCIL ON ENVIRONMENTAL QUALITY and MARY NEUMAYR, in her official capacity as chair of the Council on Environmental Quality,<br><br>        Defendants. | Case No. 3:20-cv-05199-RS<br><br>Related Case: No. 3:20-cv-6057-RS<br><br>**NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: December 3, 2020<br>Time: 1:30 p.m.<br>Judge: Hon. Richard Seeborg |

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO ALL PARTIES AND ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 3, 2020, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Richard Seeborg, at 450 Golden Gate Avenue, 17th Floor, Courtroom 3, San Francisco, CA 94102, Proposed Intervenors American Farm Bureau Federation, American Forest Resource Council, American Fuel & Petrochemical Manu-facturers, American Petroleum Institute, American Road & Transportation Builders Association, Chamber of Commerce of the United States of America, Federal Forest Resource Council, Interstate Natural Gas Association of America, Laborers' International Union of North America, and National Cattlemen's Beef Association will appear and present their unopposed motion to intervene in this case pursuant to Rule 24 of the Federal Rules of Civil Procedure.

This Motion is based upon this Notice of Motion and Motion, the pleadings and papers filed in this action, and such other matters as may be presented to the Court before or at the time of the hearing.

DATED: October 19, 2020          By:     */s/ William P. Donovan, Jr.*
                                         William P. Donovan, Jr. (SBN 155881)
                                         *Attorney for Proposed Intervenors*

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF CONTENTS**

Table of Authorities ............................................................................................................... ii

Introduction ........................................................................................................................... 1

Issues to Be Decided ............................................................................................................. 2

Statement of Facts ................................................................................................................. 2

Legal Standard ...................................................................................................................... 4

Argument ............................................................................................................................... 5

    A.    The Proposed Intervenors meet the requirements for intervention as of right .............. 5

    B.    Alternatively, the Proposed Intervenors should be allowed to intervene permissively .................................................................................................................. 11

    C.    Conditions for Plaintiffs' non-opposition ..................................................................... 12

Conclusion ........................................................................................................................... 13

**TABLE OF AUTHORITIES**

**Cases**

*Aids Healthcare Found., Inc. v. Orange Cty.*,
  2008 WL 5381855 (M.D. Fla. Dec. 23, 2008) ..........................................................................11

*Am. Farm Bureau Fed'n v. EPA*,
  278 F.R.D. 98 (M.D. Pa. 2011) ................................................................................................8

*Anderson v. McCarthy*,
  2016 WL 2770544 (N.D. Cal. May 13, 2016) ..........................................................................6

*California v. Bureau of Land Mgmt.*,
  2018 WL 3439453 (N.D. Cal. July 17, 2018) .......................................................................6, 8

*California v. Health & Human Servs.*,
  330 F.R.D. 248 (N.D. Cal. 2019) ...........................................................................................11

*California v. U.S. Dep't of the Interior*,
  381 F. Supp. 3d 1153 (N.D. Cal. 2019) ...................................................................................5

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011) ................................................................................................6, 8

*City of Emeryville v. Robinson*,
  621 F.3d 1251 (9th Cir. 2010) .................................................................................................6

*Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*,
  788 F.3d 312 (D.C. Cir. 2015) .................................................................................................8

*Ctr. for Biological Diversity v. Jewell*,
  2015 WL 13037049 (D. Ariz. May 12, 2015) ........................................................................11

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*,
  2016 WL 1394355 (N.D. Cal. Apr. 7, 2016) ...........................................................................6

*Feller v. Brock*,
  802 F.2d 722 (4th Cir. 1986) ...................................................................................................8

*Forest Conservation Council v. U.S. Forest Serv.*,
  66 F.3d 1489 (9th Cir. 1995) ...................................................................................................9

*Freedom from Religion Foundation, Inc. v. Geithner*,
  644 F.3d 836 (9th Cir. 2011) .................................................................................................11

*Georgia v. Wheeler*,
  418 F. Supp. 3d 1336 (S.D. Ga. 2019) ..................................................................................10

*Kleppe v. Sierra Club*,
  427 U.S. 390 (1976) .................................................................................................................2

*Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*,
  140 S. Ct. 2367 (2020) .............................................................................................................8

*California ex rel. Lockyer v. United States*,
  450 F.3d 436 (9th Cir. 2006) .................................................................................................10

*McDonald v. E. J. Lavino Co.*,
  430 F.2d 1065 (5th Cir. 1970) ...............................................................................................11

*N.Y. Pub. Interest Research Group v. Regents of Univ. of State of N.Y.*,
  516 F.2d 350 (2d Cir. 1975) .....................................................................................................7

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

**Cases—continued**

*New Century Bank v. Open Sols., Inc.*,
  2011 WL 1666926 (E.D. Pa. May 2, 2011) ......................................................................11

*Perry v. Proposition 8 Official Proponents*,
  587 F.3d 947 (9th Cir. 2009) ..............................................................................................5

*Sierra Club v. Espy*,
  18 F.3d 1202 (5th Cir. 1994) ...............................................................................................8

*Smith v. L.A. Unified Sch. Dist.*,
  830 F.3d 843 (9th Cir. 2016) ...............................................................................................6

*S.C. Coastal Conservation League v. Ross*,
  2019 WL 5872423 (D.S.C. Feb. 8, 2019) ...........................................................................7

*Spangler v. Pasadena City Bd. of Educ.*,
  552 F.2d 1326 (9th Cir. 1977) .............................................................................................5

*Sw. Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) ...............................................................................................9

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
  137 S. Ct. 1645 (2017) ........................................................................................................8

*United States v. Alisal Water Corp.*,
  370 F.3d 915 (9th Cir. 2004) ...........................................................................................5, 6

*Utah Ass'n of Ctys. v. Clinton*,
  255 F.3d 1246 (10th Cir. 2001) ...........................................................................................8

*Virginia House of Delegates v. Bethune-Hill*,
  139 S. Ct. 1945 (2019) ........................................................................................................8

*Wilderness Society v. United States Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) .............................................................................................6

**Statutes, Rules, and Regulations**

42 U.S.C. § 4332(2)(C) ...............................................................................................1, 2, 3

40 C.F.R.
  § 1502.4 .................................................................................................................................3
  § 1502.7 .................................................................................................................................3
  § 1502.14–.16 .......................................................................................................................3
  § 1502.19 ...............................................................................................................................3
  § 1503.1 .................................................................................................................................3
  § 1505.2 .................................................................................................................................3
  § 1508.9 .................................................................................................................................3
  § 1508.22 comment. ..........................................................................................................3, 4

83 Fed. Reg. 28,591 (June 20, 2018) ..................................................................................4

85 Fed. Reg. 1,684 (January 10, 2020) ...............................................................................4

85 Fed. Reg. 43,304 (July 16, 2020) .........................................................................1, 3, 7, 9

Fed. R. Civ. P.
  24(a) ............................................................................................................................2, 5, 6
  24(b) ................................................................................................................................3, 5
  24(b)(1)(B) ...........................................................................................................................5

**MOTION TO INTERVENE, NO. 3:20-CV-05199**

**Statutes, Rules, and Regulations—continued**

Fed. R. Civ. P.

    24(b)(3) ..........................................................................................................................5

**Other Authorities**

*National Environmental Policy Act*, GAO-14-370 (April 2014) .......................................................3

Juliet Eilperin & Felicia Sonmez, *Trump scales back landmark environmental law,*
    *saying it will help restart the economy*, Wash. Post., July 15, 2020.........................................10

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MOTION TO INTERVENE, NO. 3:20-CV-05199**

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

The complaint in this case challenges a final rule of the Council on Environmental Quality (CEQ) titled "Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act," and published at 85 Fed. Reg. 43,304 (July 16, 2020). The rule became effective on September 14, 2020. *See id.* This rule (the "NEPA Rule") updates and streamlines CEQ's implementing regulations for the National Environmental Policy Act (NEPA), which requires federal agencies to evaluate the environmental impact of "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Federal actions covered by NEPA often include federal permitting decisions under separate and distinct laws like the Clean Water Act and Clean Air Act.

Over the years, NEPA reviews have become increasingly burdensome, expensive, and time-consuming to prepare, impeding business operations and development projects across the nation. The NEPA Rule addresses this problem by clarifying the requirements for NEPA review and the scope of relevant considerations, improving coordination among agencies involved in reviewing a single federal project, and providing for more orderly public input.

The Proposed Intervenors are nine national trade associations and a leading North American labor union: the American Farm Bureau Federation, American Forest Resource Council, American Fuel & Petrochemical Manufacturers, American Petroleum Institute, American Road & Transportation Builders Association, Chamber of Commerce of the United States of America, Federal Forest Resource Coalition, Interstate Natural Gas Association of America, Laborers' International Union of North America, and National Cattlemen's Beef Association. The Proposed Intervenors' members include builders, owners, operators, and employees of agricultural, manufacturing, energy, and infrastructure facilities of all kinds. These organizations frequently engage in operations and development projects that require federal permits and thus NEPA reviews.

The Proposed Intervenors have a significant legal stake in CEQ's decision to update its NEPA regulations. Under the NEPA Rule, the statute will continue to live up to Congress's original purpose of ensuring that federal agencies give "consideration [to] the environmental impact of their

1   actions in [major] decisionmaking" (*Kleppe v. Sierra Club*, 427 U.S. 390, 409 (1976)), while

2   providing much needed clarity and stability regarding the scope of review. If Plaintiffs here obtain

3   a vacatur of the Rule, CEQ's reform of the NEPA review framework would be undone, and the

4   Proposed Intervenors' members would once again be subject to an uncertain and overly-burden-

5   some regulatory scheme that invites obstructive litigation and needlessly delays important projects

6   and operations.

7       The Proposed Intervenors sought and were granted intervenor status in closely related

8   lawsuits pending in the Southern District of New York and in the Western District of Virginia

9   (although one of the Proposed Intervenors did not seek intervention in Virginia case.) *See* Order,

10  *Environmental Justice Health Alliance v. CEQ*, No. 1:20-cv-6143 (S.D.N.Y. Oct. 13, 2020), Dkt.

11  34; Order, *Wild Virginia. v. CEQ*, No. 3:20-cv-45 (W.D. Va. Aug. 31, 2020), Dkt. 72. This Court

12  should likewise permit the Proposed Intervenors to intervene as defendants in this case. The motion

13  is timely; the Proposed Intervenors have a legal interest in the NEPA Rule, which may be impaired

14  if they are denied intervention; and CEQ, as a government entity charged with protecting the

15  interests of the public at large, cannot be counted upon to represent the private interests of the

16  regulated business community. The Proposed Intervenors thus satisfy all of the requirements for

17  intervention as of right and permissively. Plaintiffs do not oppose intervention subject to certain

18  limiting terms, to which the Proposed Intervenors agree.

19                          **ISSUES TO BE DECIDED**

20      1.      Whether the Proposed Intervenors are entitled to intervene as defendants in this

21  action as of right under Fed. R. Civ. P. 24(a).

22      2.      Whether the Proposed Intervenors should be granted leave to intervene permissively

23  under Fed. R. Civ. P. 24(b).

24                          **STATEMENT OF FACTS**

25      NEPA provides that, for any "major Federal action[] significantly affecting the quality of

26  the human environment," the federal agencies with jurisdiction over the action must prepare "a

27  detailed statement" on "the environmental impact of the proposed action." 42 U.S.C. § 4332(2)(C).

28  The first step in this process is an environmental assessment, or EA, which determines whether the

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    federal action is "major" and whether it will have a "significant" effect on the environment. *See* 40

2    C.F.R. § 1508.9. If a proposed action meets these requirements, the agency must prepare an

3    environmental impact statement, or EIS. *See* 40 C.F.R. § 1502.4.

4         Under CEQ regulations first promulgated in 1978, when an agency determines that an EIS

5    is required, it must publish a notice of intent in the Federal Register giving the public an opportunity

6    to comment. 40 C.F.R. § 1508.22. The EIS, in turn, must contain information on "the environmental

7    impact of the proposed action" and "any adverse environmental effects which cannot be avoided

8    should the proposal be implemented." 42 U.S.C. § 4332(2)(C). Historically, the EIS must identify

9    and discuss "all reasonable alternatives" to the proposed action (including those not within the

10   jurisdiction of the reviewing agency), and explain why the alternatives were not taken. *See* 40

11   C.F.R. §§ 1502.14–.16, 1502.19. After completing the EIS, which typically takes many years to

12   prepare, the agency must take additional comment. 40 C.F.R. § 1503.1. This is followed by a

13   waiting period and the issuance of a Record of Decision, or ROD. An ROD describes the agency's

14   decision, the alternatives the agency considered, and the agency's plans for mitigation and monitor-

15   ing of environmental effects, if necessary. 40 C.F.R. § 1505.2.

16        Due largely to the risk of litigation and inconsistent judicial interpretations of central NEPA

17   terms and requirements, federal agencies have implemented progressively more complex and

18   burdensome requirements under NEPA over the years. When CEQ's regulations were first promul-

19   gated more than 40 years ago, they stated that EISs normally should be less than 150 pages, with a

20   maximum length of 300 pages for proposals of "unusual scope or complexity." 40 C.F.R. § 1502.7.

21   Today, compliance with those limits is the exception rather than the norm. The average length for

22   a final EIS now exceeds 650 pages, and a quarter of all final statements exceed 750 pages. *See* 85

23   Fed. Reg. at 43,305. CEQ previously recommended that completing an EIS should not take longer

24   than one year; in reality, the average time now approaches five years. *Id*.; *accord* GAO, *National*

25   *Environmental Policy Act*, GAO-14-370, at 14 (April 2014), perma.cc/9UTJ-3C4N.

26        Agencies undertaking NEPA reviews have gathered and analyzed boundless amounts of

27   data and evidence concerning distantly indirect effects for use in analyses that have often been

28   irrelevant to their decisionmaking processes, all to minimize the risk that a court will later find the

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -                    **MOTION TO INTERVENE, NO. 3:20-CV-05199**

1    record insufficient. Along the way, regulated entities have been required to produce redundant

2    documents to multiple agencies participating in a largely uncoordinated process. Yet this vast over-

3    inclusion and repetition has not, in fact, reduced the risk of litigation, which has persisted in the

4    face of unclear and inconsistent interpretations of terms. Nor has it enhanced the quality of agency

5    decisions, because agencies' analytical capacity is scattered rather than focused.

6          To address these problems, CEQ published an advance notice of proposed rulemaking on

7    June 20, 2018 (83 Fed. Reg. 28,591) and a notice of proposed rulemaking on January 10, 2020 (85

8    Fed. Reg. 1,684) proposing to "modernize and clarify the CEQ regulations" and "to facilitate more

9    efficient, effective, and timely NEPA reviews" by "simplifying regulatory requirements, codifying

10   certain guidance and case law relevant to these proposed regulations, revising the regulations to

11   reflect current technologies and agency practices, [and] eliminating obsolete provisions." *See* 85

12   Fed. Reg. at 1,685. CEQ received and considered more than 8,000 unique comments on the NPRM,

13   including from each of the Proposed Intervenors. *See* Yates Decl. (Ex. 1) ¶ 6; Imbergamo Decl.

14   (Ex. 2) ¶ 9; Moskowitz Decl. (Ex. 3) ¶ 6; Macchiarola Decl. (Ex. 4) ¶ 6; Goldstein Decl. (Ex. 5)

15   ¶ 6; Mortimer Decl. (Ex. 6) ¶ 6; Dreskin Decl. (Ex. 7) ¶ 6; Farner Decl. (Ex. 8) ¶ 6; Yager Decl.

16   (Ex. 9) ¶ 6.

17         CEQ published the final NEPA Rule on July 16, 2020, and it became effective September

18   14, 2020. The NEPA Rule reforms the NEPA process in numerous respects, including by clarifying

19   the proper scope of NEPA reviews, facilitating coordination for reviews involving more than one

20   agency, and identifying presumptive page and time limits for reviews.

21         Plaintiffs, a group of environmental organizations, filed this lawsuit on July 29, 2020. Dkt.

22   1. They allege that the NEPA Rule violates NEPA, the Administrative Procedure Act, and the

23   Endangered Species Act. *See* Dkt. 22 ¶¶ 256-315. Plaintiffs ask the Court to vacate the NEPA Rule

24   as unlawful and enjoin CEQ from implementing or enforcing it. *Id.* at pp. 118-19.

## LEGAL STANDARD

26         Federal Civil Rule 24 provides for intervention as of right and permissively. An applicant

27   for intervention as of right under Rule 24(a) must "demonstrate that (1) it has a significant

28   protectable interest relating to the property or transaction that is the subject of the action; (2) the

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    disposition of the action may, as a practical matter, impair or impede the applicant's ability to

2    protect its interest; (3) the application is timely; and (4) the existing parties may not adequately

3    represent the applicant's interest." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir.

4    2004) (quotation marks omitted). "In determining whether intervention is appropriate, courts are

5    guided primarily by practical and equitable considerations, and the requirements for intervention

6    are broadly interpreted in favor of intervention." *Id.*

7            A court may alternatively grant permissive intervention by anyone who "has a claim or

8    defense that shares with the main action a common question of law or fact." Fed. R. Civ. P.

9    24(b)(1)(B). "A district court may grant permissive intervention under [Rule 24(b)] where the

10   applicant shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the

11   applicant's claim or defense, and the main action, have a question of law or a question of fact in

12   common." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (quotation

13   marks omitted). "Where a putative intervenor has met these requirements, the court may also

14   consider other factors in the exercise of its discretion, including 'the nature and extent of the

15   intervenors' interest' and 'whether the intervenors' interests are adequately represented by other

16   parties.'" *Id.* (quoting *Spangler v. Pasadena City Bd. of Educ.,* 552 F.2d 1326, 1329 (9th Cir.

17   1977)). The court must also consider "whether the intervention will unduly delay or prejudice the

18   adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

19                                    **ARGUMENT**

20       **A.     The Proposed Intervenors meet the requirements for intervention as of right**

21           The Proposed Intervenors meet all four requirements for intervention as of right under Rule

22   24(a): They have concrete interests at stake in this litigation, and CEQ, as an executive branch

23   agency, will not adequately represent those interests or align with the Proposed Intervenors' view

24   of the relevant issues. This Court routinely allows national trade associations to intervene as

25   defendants in APA suits in which the plaintiffs challenge federal regulations with which the

26   associations' members must comply. *See, e.g.*, *California v. U.S. Dep't of the Interior*, 381 F. Supp.

27   3d 1153, 1158 (N.D. Cal. 2019) (granting intervention to national trade associations and

28   conservations associations in an APA case concerning repeal of Department of Interior

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1   regulations); *California v. Bureau of Land Mgmt.*, 2018 WL 3439453, at \*8 (N.D. Cal. July 17,

2   2018) (granting intervention to national trade associations as defendants an APA case concerning

3   rescission of a 2015 oil extraction regulation); *Anderson v. McCarthy*, 2016 WL 2770544, at \*1

4   (N.D. Cal. May 13, 2016) (in an APA challenge to a pesticide rule, granting motions to intervene

5   as defendants filed by "several trade associations that would be affected by the outcome of this

6   case"); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 2016 WL 1394355, at \*4 (N.D.

7   Cal. Apr. 7, 2016) (granting defendant-intervenor status to five national trade associations in an

8   APA lawsuit concerning the Endangered Species Act). The same outcome is warranted here.

9        1.  The motion is timely. "Timeliness is determined by the totality of the circumstances

10   facing would-be intervenors, with a focus on three primary factors: '(1) the stage of the proceeding

11   at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for

12   and length of the delay.'" *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016)

13   (quoting *Alisal Water*, 370 F.3d at 921).

14        These factors indicate straightforwardly that the motion here is timely. This motion has been

15   filed within three months of the commencement of this lawsuit on July 29, 2020. There is no risk

16   of prejudice because the case is in its earliest stages, and no responsive pleading has yet been filed.

17   "These are traditional features of a timely motion." *Citizens for Balanced Use v. Mont. Wilderness

18   Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (noting that "[a]pplicants filed their motion to intervene

19   in a timely manner, less than three months after the complaint was filed and less than two weeks

20   after the [government] filed its answer to the complaint").

21        2.  The Proposed Intervenors have a "significantly protectable" interest implicated by

22   Plaintiffs' challenge to the NEPA Rule. *City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th

23   Cir. 2010). A "specific legal or equitable interest" is not required on this score, and it is "generally

24   enough that the interest is protectable under some law, and that there is a relationship between the

25   legally protected interest and the claims at issue." *Wilderness Society v. United States Forest Serv.*,

26   630 F.3d 1173, 1179 (9th Cir. 2011) (en banc). Accordingly, a prospective intervenor "has a

27   sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as

28   a result of the pending litigation." *Id*. National trade associations thus ordinarily have "a sufficient

**MOTION TO INTERVENE, NO. 3:20-CV-05199**

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1   interest to permit [them] to intervene [when] the validity of a regulation from which [their] members

2   benefit is challenged," and where lifting the regulation "might well lead to significant changes in

3   the profession and in the way [the members] conduct their businesses." *N.Y. Pub. Interest Research*

4   *Group v. Regents of Univ. of State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (per curiam).

5          That is the case here. The NEPA Rule improves regulatory certainty—and reduces the

6   regulatory burden and likelihood of litigation—for the Proposed Intervenors' members. It does so

7   by clarifying NEPA's key terms, more appropriately calibrating the regulations' scope to the words

8   that Congress used. In addition, the Rule will make NEPA reviews less time consuming, more

9   efficient, and less costly by encouraging coordination among agencies involved in a single federal

10  project (*see* 85 Fed. Reg. at 43,325) and setting predictable and enforceable rules concerning

11  timelines and page limits (*id*. at 43,362-64). It also will eliminate the need to categorize effects as

12  "direct" or "indirect" and situate the concept of "cumulative" effects within the proximate-cause

13  framework, focusing appropriately on whether effects are reasonably foreseeable and have a

14  reasonably close causal relationship to the proposed action. *Id*. at 43,343-44.

15         All of this together will make NEPA reviews significantly more efficient and less burden-

16  some for the Proposed Intervenors' members, who frequently must participate in the NEPA review

17  process in connection with permits for their ongoing operations and development projects. *See*

18  Yates Decl. ¶ 7; Imbergamo Decl. ¶ 10; Moskowitz Decl. ¶ 7; Macchiarola Decl. ¶ 7; Goldstein

19  Decl. ¶ 7; Mortimer Decl. ¶ 7; Dreskin Decl. ¶ 7; Farner Decl. ¶¶ 7-13; Yager Decl. ¶¶ 7-9. The

20  clarified and simplified procedures under the NEPA Rule will relieve the Proposed Intervenors'

21  members from obstructive delays that Congress never intended them to bear, allowing them to

22  dedicate more of their resources to their businesses—including projects like efficient mass transit

23  lines and renewable energy facilities. *See* Yates Decl. ¶¶ 8-9; Imbergamo Decl. ¶¶ 11-12;

24  Moskowitz Decl. ¶¶ 8-9; Macchiarola Decl. ¶¶ 8-9; Goldstein Decl. ¶¶ 8-9; Mortimer Decl. ¶¶ 8-

25  9; Dreskin Decl. ¶¶ 8-9; Farner Decl. ¶¶ 14-15; Yager Decl. ¶¶ 10-11.

26         The Proposed Intervenors thus have a "major economic stake in the outcome of this litiga-

27  tion" that suffices to support intervention. *S.C. Coastal Conservation League v. Ross*, 2019 WL

28  5872423, at *2 (D.S.C. Feb. 8, 2019) (permitting American Petroleum Institute and other parties to

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -          **MOTION TO INTERVENE, NO. 3:20-CV-05199**

1    intervene as of right to defend agency actions permitting oil and gas surveys in coastal waters); *see*

2    *also, e.g.*, *California*, 2018 WL 3439453, at \*8.

3           3.   The resolution of this case may impair the Proposed Intervenors' ability to protect their

4    interests. "To satisfy this element of the intervention test, a would-be intervenor must show only

5    that impairment of its substantial legal interest is *possible* if intervention is denied. This burden is

6    minimal." *Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 108 (M.D. Pa. 2011) (quoting *Utah*

7    *Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1253 (10th Cir. 2001)).

8           Plaintiffs here seek a complete vacatur of the NEPA Rule. If this Court entered a judgment

9    granting that relief, the Proposed Intervenors' members would remain subject to the prior NEPA

10   regulatory framework and its many burdens. To protect their interests, it is essential that the

11   Proposed Intervenors be allowed to participate in this case.[1]

12          4.   Finally, the Proposed Intervenors cannot rely on CEQ to adequately represent their

13   interests. Here, again, "[t]he burden of showing inadequacy of representation is minimal and

14   satisfied if the applicant can demonstrate that representation of its interests may be inadequate."

15   *Citizens for Balanced Use*, 647 F.3d at 898 (quotation marks omitted).

16          As a general matter, "the government's position is defined by the public interest," not just

17   "the interests of a particular group of citizens." *Feller v. Brock*, 802 F.2d 722, 730 (4th Cir. 1986);

18   *accord Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994) (observing that "[t]he government

19   must represent the broad public interest, not just the economic concerns" of private business

20   interests). The "more narrow . . . interest[]" of private business is just one among many varied and

21   often competing constituencies represented by CEQ, which bears statutory obligations on behalf of

22

23   _____

     [1]   Recent Supreme Court decisions make clear that the Proposed Intervenors, who seek to
     intervene as defendants and do not seek additional relief beyond that sought by the other parties,
24   are not required to demonstrate independent Article III standing. *See, e.g.*, *Little Sisters of the Poor
     Saints Peter and Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020) (citing *Town of*
25   *Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017)); *Virginia House of Delegates v.
     Bethune-Hill*, 139 S. Ct. 1945, 1952 (2019). But even if the Proposed Intervenors were required to
26   establish standing, they have readily done so in light of the concrete injuries that they and their
     members would suffer if the NEPA Rule were invalidated. *See, e.g.*, *Crossroads Grassroots Policy*
27   *Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 317 (D.C. Cir. 2015) (finding "a sufficient injury
     in fact where a party benefits from agency action, the action is then challenged in court, and an
28   unfavorable decision would remove the party's benefit").

**MOTION TO INTERVENE, NO. 3:20-CV-05199**

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    the "general public" as a whole. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489,

2    1499 (9th Cir. 1995) (quotation omitted). Courts thus routinely grant intervention in cases like this

3    because "[t]he interests of government and the private sector may diverge," and "[t]he priorities of

4    the defending government agencies are not" the same as the priorities of the private, regulated

5    public. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001).

6          This Court should do the same. CEQ's and the Proposed Intervenors' interests differ

7    significantly in this litigation, principally because the CEQ and the Proposed Intervenors often have

8    competing priorities when it comes to NEPA and to the federal government's authority and

9    obligations under administrative law. In light of their often conflicting priorities, the substantive

10   legal positions that CEQ takes in this lawsuit will diverge from the positions that the Proposed

11   Intervenors would take.

12         The parties' briefing in the *Wild Virginia* case confirms this point. There, CEQ's motion to

13   dismiss argued that private litigants cannot bring facial APA challenges to regulations except in

14   "special circumstances" (Defs.' Mem. in Supp. of Mot. to Dismiss at 16, *Wild Virginia* (W.D. Va.

15   Aug. 25, 2020), ECF No. 53), and counsel for CEQ argued in a recent hearing that regulated parties

16   are precluded from bringing as-applied challenges to regulations once initial limitations periods for

17   facial challenges have lapsed. Those arguments, if accepted by this Court, would be damaging to

18   the Proposed Intervenors' interests. Having been granted intervention in the *Wild Virginia* case, the

19   Proposed Intervenors were able to protect their interests by presenting different and narrower

20   arguments for why the plaintiffs lacked Article III standing. Brief in Supp. of Business Ass'ns'

21   Mot. to Dismiss at 4-10, *Wild Virginia* (W.D. Va. Aug. 25, 2020), ECF No. 57.

22         Similarly, the *Wild Virginia* litigation demonstrates that the Proposed Intervenors and CEQ

23   have divergent interests with respect to *Chevron* deference. CEQ has an institutional interest in

24   aggressively protecting deference doctrines. *See* 85 Fed. Reg. at 43,307 (explaining that the NEPA

25   Rule is "intended to embody CEQ's interpretation of NEPA for *Chevron* purposes"). That

26   observation, again, has been borne out in CEQ's briefs in the *Wild Virginia* case. *See* Defs.' Opp'n

27   to Mot. for Prelim. Inj. at 13, 15, *Wild Virginia* (W.D. Va. Sept. 2, 2020), ECF No. 75. The Proposed

28   Intervenors, by contrast, do not share the government's institutional interest in *Chevron*; indeed,

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Proposed Intervenors are often opposite federal agencies in litigation where their interests with

2    respect to deference point in opposite directions. Thus, the Proposed Intervenors defended the

3    NEPA Rule principally without relying on *Chevron*. *See* Business Ass'ns' Brief in Opp'n to Mot.

4    for Prelim. Inj. at 20, *Wild Virginia* (W.D. Va. Sept. 2, 2020), ECF No. 74.

5          In short, there is no question that the government will rely on arguments that are often

6    inconsistent with the Proposed Intervenors' institutional interests. The Proposed Intervenors will

7    therefore "bring a point of view to the litigation not presented by either the plaintiffs or the

8    defendants," warranting their participation as intervenors. *California ex rel. Lockyer v. United*

9    *States*, 450 F.3d 436, 445 (9th Cir. 2006).

10         That is especially so given the risk that the Proposed Intervenors face in light of the

11   upcoming presidential election. New administrations often reverse policies after taking office. For

12   example, after the administration change in January 2017, the government ceased defending a high

13   profile Clean Water Act regulation promulgated by the prior administration. *See, e.g.*, *Georgia v.*

14   *Wheeler*, 418 F. Supp. 3d 1336, 1344 (S.D. Ga. 2019) (noting that EPA had "declined to defend

15   the substantive challenges to" the rule). Similar shifts took place four years before that. *See, e.g.*,

16   Federal Defs.' Mot. to Stay All Proceedings at 1, *Connecticut v. United States*, No. 3:09-cv-54 (D.

17   Conn. Mar. 10, 2009), ECF No. 93 (informing court that government planned to rescind a

18   healthcare moral conscience regulation and requesting that challenge be stayed).

19         If there is a change in administration while this litigation is pending, the government's

20   position on the NEPA Rule is very likely to change, and the government may cease defending the

21   Rule in litigation. *See* Juliet Eilperin & Felicia Sonmez, *Trump scales back landmark environ-*

22   *mental law, saying it will help restart the economy*, Wash. Post., July 15, 2020, perma.cc/FAS8-

23   9YDH (reporting that the Biden campaign has promised to "reverse the new [NEPA] rule if

24   elected"). If that eventuality occurs, the Proposed Intervenors' participation will be essential to

25   continuing a defense of the Rule. Accordingly, CEQ cannot be counted upon to adequately

26   represent the Proposed Intervenors' interest in a consistent and robust defense of the provisions of

27

28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1  the Rule from which they will benefit.[2]

2       **B.    Alternatively, the Proposed Intervenors should be allowed to intervene
3              permissively**

4       Because the Proposed Intervenors are entitled to intervene as of right, the Court need not

5  decide whether intervention should be granted permissively. But if the Court denies intervention as

6  of right, it should grant the Proposed Intervenors leave to intervene permissively instead.

7       1.   The first requirement for permissive intervention—*i.e.*, an independent ground for juris-

8  diction—"does not apply to proposed intervenors in federal-question cases," like this one, where

9  "the proposed intervenor[s] [are] not raising new claims." *Freedom from Religion Foundation, Inc.*

10  *v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011).

11       2.   The motion here is timely, for the reasons stated above.

12       3.   And the Proposed Intervenors' defense of the NEPA Rule will share common questions

13  of law or fact with the main action—*i.e.*, whether the NEPA Rule is valid under NEPA and the

14  APA. *See, e.g.*, *California v. Health & Human Servs.*, 330 F.R.D. 248, 255 (N.D. Cal. 2019)

15  (explaining that proposed intervenor's claim involved common question "whether the Final Rules

16  violate the Administrative Procedure Act or the Constitution"). Thus, all three of the prerequisites

17  for permissive intervention are satisfied.

18       4.   Moreover, the relevant discretionary considerations all favor allowing permissive inter-

19  vention: Permitting the Proposed Intervenors to intervene to defend the NEPA Rule would allow

20  them to vindicate their substantial interests, and given their promptness in seeking intervention,

21  would neither delay this case nor prejudice any of the parties. *See McDonald v. E. J. Lavino Co.*,

22

23  ――――――――――――――――
2    Consistent with Rule 24(c), the Proposed Intervenors attach a motion to dismiss and a
24  memorandum of points and authorities in support. Courts uniformly hold that motions to dismiss
satisfy Rule 24(c). *See, e.g.*, *Ctr. for Biological Diversity v. Jewell*, 2015 WL 13037049, at *1 (D.
25  Ariz. May 12, 2015) (Rule 24(c) is satisfied with a "motion to dismiss, in lieu of an answer"); *New
Century Bank v. Open Sols., Inc.*, 2011 WL 1666926, at *3 (E.D. Pa. May 2, 2011) (a "motion to
26  dismiss . . . satisfies Rule 24(c)"); *Aids Healthcare Found., Inc. v. Orange Cty.*, 2008 WL 5381855,
at *1 (M.D. Fla. Dec. 23, 2008) (finding Rule 24(c) satisfied where the proposed intervenor "seeks
27  to join in [the defendant's] motion to dismiss"). In the event the Court grants our motion to
intervene, we ask that it deem the attached motion to dismiss filed on the same date that the
28  government defendants file their corresponding motion and memorandum.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1   430 F.2d 1065, 1074 (5th Cir. 1970) (permissive intervention should be granted "where no one

2   would be hurt and greater justice would be attained") (quotation omitted). Thus, if the Court holds

3   that the Proposed Intervenors are not entitled to intervene as of right, it should at minimum permit

4   them to intervene permissively.

5   **C.      Conditions for Plaintiffs' non-opposition**

6   Counsel for the Proposed Intervenors has conferred with counsel for Plaintiffs, who state

7   that they do not oppose intervention upon the following conditions:

8   1.   Proposed Intervenors' principal briefs are limited to two-thirds the length of Plaintiffs'

9   corresponding principal brief, and their replies, if any, are limited to two-thirds the length of the

10  Defendants' corresponding reply.

11  2.   Proposed Intervenors file their briefs no more than seven calendar days after Defendants

12  file their corresponding brief.

13  3.   Proposed Intervenors endeavor in good faith to avoid duplicative briefing of matters

14  already covered in Defendants' briefs.

15  4.   If Plaintiffs elect to respond to a brief filed by Proposed Intervenors, Plaintiffs may

16  submit a consolidated brief with a page limit equal to the sum of the same page limits for separate

17  responses to Proposed Intervenors' and Defendants' briefs.

18  5.   Proposed Intervenors will not initiate discovery, but if discovery is initiated by Plaintiffs

19  or Defendants, the Proposed Intervenors may participate in such discovery, subject to any limits

20  agreed upon by the parties or ordered by the Court—provided, however, that nothing in this

21  statement shall be construed as an agreement by anyone that discovery by any party would be

22  appropriate in this matter.

23

24

25

26

27

28

**MOTION TO INTERVENE, NO. 3:20-CV-05199**

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

**CONCLUSION**

The motion to intervene should be granted.

Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**

DATED: October 19, 2020          By:     /s/ *William P. Donovan, Jr.*

Michael B. Kimberly*
Matthew A. Waring*
mkimberly@mwe.com
mwaring@mwe.com
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000

William P. Donovan, Jr. (SBN 155881)
wdonovan@mwe.com
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
(310) 277-4110

*Attorneys for Proposed Intervenors*

*\*pro hac vice* motion to be filed