KRISTEN L. BOYLES (CSBA #158450)
JAN E. HASSELMAN (WSBA # 29107)
*[Admitted Pro Hac Vice]*
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA  98104
(206) 343-7340
kboyles@earthjustice.org
jhasselman@earthjustice.org

SUSAN JANE M. BROWN (OSBA #054607)
*[Admitted Pro Hac Vice]*
WESTERN ENVIRONMENTAL LAW CENTER
4107 NE Couch St.
Portland, OR.  97232
(503) 914-1323
brown@westernlaw.org

GREGORY C. LOARIE (CSBA #215859)
EARTHJUSTICE
50 California Street, Suite 500
San Francisco, CA  94111
(415) 217-2000
gloarie@earthjustice.org

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ALASKA COMMUNITY ACTION ON TOXICS, et al. | Case No. 3:20-cv-5199-RS |
| Plaintiffs, | Related Case: No. 3:20-cv-6057-RS |
| v. | |
| COUNCIL ON ENVIRONMENTAL QUALITY, and MARY NEUMAYR, in her official capacity as Chair of the Council on Environmental Quality, | PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS |
| Defendants. | |

PLAINTIFFS' OPPOSITION TO
MOTIONS TO DISMISS

TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................2

STANDARD OF REVIEW .....................................................................................5

ARGUMENT .........................................................................................................6

I.     PLAINTIFFS HAVE STANDING TO CHALLENGE THE FINAL RULE. ...................7

     A.     Plaintiffs Have Unique and Continuing Interests in Specific Geographic Areas Where NEPA Applies.................................................................8

     B.     Harms Stemming from Plaintiffs' Procedural Claims Are Immediate.................11

     C.     Plaintiffs Also Have Standing Due to an Imminent Risk of Harm.......................19

     D.     Plaintiffs Satisfy the Causation and Redressability Components of Standing. ..........................................................................................23

II.     PLAINTIFFS' CLAIMS ARE RIPE FOR REVIEW.........................................24

     A.     Constitutional Ripeness .........................................................24

     B.     Prudential Ripeness................................................................25

          1.     Plaintiffs' claims are fit for judicial decision.............................26

          2.     Plaintiffs will suffer hardship if review is delayed. ...................30

CONCLUSION.....................................................................................................31

PLAINTIFFS' OPPOSITION TO
MOTIONS TO DISMISS  - i -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967).........................................................................................24, 25

*Air All. Houston v. Envtl. Prot. Agency,*
    906 F.3d 1049 (D.C. Cir. 2018)..................................................................................18

*Babbitt v. United Farm Workers Nat'l Union,*
    442 U.S. 289 (1979)....................................................................................................29

*California ex rel. Becerra v. Sessions,*
    284 F. Supp. 3d 1015 (N.D. Cal. 2018) ......................................................................25

*Bennett v. Spear,*
    520 U.S. 154 (1997)......................................................................................................8

*Bishop Paiute Tribe v. Inyo Cnty.,*
    863 F.3d 1144 (9th Cir. 2017) ..............................................................................24, 25

*Brown v. City of Los Angeles,*
    521 F.3d 1238 (9th Cir. 2008) .....................................................................................9

*California v. Azar,*
    911 F.3d 558 (9th Cir. 2018) ......................................................................................18

*California v. Bernhardt,*
    472 F. Supp. 3d 573 (N.D. Cal. 2020) ........................................................................13

*Cement Kiln Recyling Coal. v. Envtl. Prot. Agency,*
    493 F.3d 207 (D.C. Cir. 2007) ....................................................................................27

*Citizens for Better Forestry v. U.S. Dep't of Agric.,*
    341 F.3d 961 (9th Cir. 2003) (*Citizens I*) ......................................................... *passim*

*Citizens for Better Forestry v. U.S. Dep't of Agric.,*
    632 F. Supp. 2d 968 (N.D. Cal. 2009) (*Citizens III*) ...............................................26

*City and Cnty. of San Francisco v. Whitaker,*
    357 F. Supp. 3d 931 (N.D. Cal. 2018) ..........................................................................7

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983).......................................................................................................22

PLAINTIFFS' OPPOSITION TO
MOTIONS TO DISMISS  - ii -

*City of Sausalito v. O'Neill,*
   386 F.3d 1186 (9th Cir. 2004) ...........................................................................31

*City of Waukesha v. Envtl. Prot. Agency,*
   320 F.3d 228 (D.C. Cir. 2003) ..............................................................................6

*Clapper v. Amnesty Int'l USA,*
   568 U. S. 398 (2013) ............................................................................................22

*Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.,*
   789 F.3d 1075 (9th Cir. 2015) ....................................................................... *passim*

*Ctr. for Biological Diversity v. Kempthorne,*
   588 F.3d at 707 ...............................................................................14, 28, 31

*Encino Motorcars, LLC v. Navarro,*
   136 S.Ct. 2117 (2016) ............................................................................................7

*Envtl. Justice Health Alliance et al. v Council on Envtl. Quality et al.,*
   No. 20-06143-CM (S.D.N.Y.) ...............................................................................1

*Envtl. Def. Fund v. Envtl. Prot. Agency,*
   922 F.3d 446 (D.C. Cir. 2019) ............................................................................24

*EPIC v. Simpson Timber Co.*
   255 F.3d 1073 (9th Cir. 2001) ..............................................................................8

*Evans v. B.F. Perkins Co.,*
   166 F.3d 642 (4th Cir. 1999) ................................................................................5

*Fair Hous. in Huntington Comm. Inc. v. Town of Huntington, N.Y.,*
   316 F.3d 357 (2d Cir. 2003) ..................................................................................5

*Flast v. Cohen,*
   392 U.S. 83 (1968) ................................................................................................8

*Fowler v. Guerin,*
   899 F.3d 1112 (9th Cir. 2018) ........................................................................24, 25

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,*
   528 U.S. 167 (2000) ...........................................................................................7, 8

*General Elec. Co v. Envtl. Prot. Agency,*
   290 F.3d 377 (D.C. Cir. 2002) ............................................................................25

*Habeas Corpus Resource Center v. U.S. Department of Justice,*
   816 F.3d 1241 (9th Cir. 2016) .......................................................................28, 29

PLAINTIFFS' OPPOSITION TO
MOTIONS TO DISMISS  - iii -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

*Idaho Conserv. League v. Mumma*,
    956 F.2d 1508 (9th Cir. 1992) ........................................................................22

*Iowa Citizens for Cmty. Improvement et al. v. Council on Envtl. Quality et al.*,
    No. 20-02715-TJK (D.D.C.) ...............................................................................1

*Johnson v. Allsteel*,
    259 F.3d 885 (7th Cir. 2001) ..........................................................................23

*Kern v. BLM*,
    284 F.3d 1162 (9th Cir. 2002) .........................................................................26

*Kootenai Tribe of Idaho v. Veneman*,
    313 F.3d 1094 (9th Cir. 2002) ...........................................................................8

*Legal Aid Soc'y of Alameda Cnty. v. Brennan*,
    608 F.2d 1319 (9th Cir. 1979) ...........................................................................6

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ...........................................................................5

*California ex rel. Lockyer v. U.S. Dep't of Agric.*,
    459 F. Supp. 2d 874 (N.D. Cal. 2006) (*Lockyer I*) ......................................17, 18

*California ex rel. Lockyer v. U.S. Dep't of Agric.*,
    575 F.3d 999 (9th Cir. 2009) (*Lockyer II*) ....................................................13, 31

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).........................................................................6, 14, 23, 28

*Lujan v. National Wildlife Federation*,
    497 U.S. 871 (1990).........................................................................................27

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) .........................................................................28

*Municipality of Anchorage v. U.S.*,
    980 F.2d 1320 (9th Cir. 1992) .........................................................................30

*Nat'l Ass'n of Homebuilders v. Army Corps of Eng'rs*,
    440 F.3d 459 (D.C. Cir. 2006).........................................................................30

*Nat'l Ass'n of Homebuilders v. Army Corps of Eng'rs*,
    417 F.3d 1272 (D.C. Cir. 2005).......................................................................29

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003)....................................................................................25, 28

PLAINTIFFS' OPPOSITION TO
MOTIONS TO DISMISS  - iv -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

*Nat'l Wildlife Fed'n v. Hodel*,
    839 F.2d 694 (D.C. Cir. 1988) ........................................................................... 23

*Natural Res. Def. Council v. Wheeler*,
    955 F.3d 68 (D.C. Cir. 2020) ............................................................................. 18

*Ohio Forestry Ass'n v. Sierra Club*,
    523 U.S. 726 (1998) .............................................................................. 25, 26, 29

*Pa. v. W. Va.*,
    262 U.S. 553 (1923) ........................................................................................... 22

*Reno v. Catholic Social Servs.*,
    509 U.S. 43 (1999) ............................................................................................. 28

*Rumsfeld v. Forum For Academics and Inst. Rights, Inc.*,
    547 U.S. 47 (2006) ............................................................................................... 9

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ............................................................................. 5

*Salmon River Concerned Citizens v. Robertson*,
    32 F.3d 1346 (9th Cir.1994) .............................................................................. 13

*Salmon Spawning & Recovery Alliance v. Gutierrez*,
    545 F.3d 1220 (9th Cir. 2008) ............................................................................. 8

*Shearwater v. Ashe*,
    2015 WL 4747881 (N.D. Cal. 2015) ............................................................ 13, 27

*Sierra Club v. Marsh*,
    872 F.2d 497 (1st Cir. 1989) .............................................................................. 13

*States of California et al. v. Council on Envtl. Quality et al.*,
    No. 20-06057-RS .................................................................................................. 1

*Summers v. Earth Island Institute*,
    555 U.S. 488 (2009) ........................................................................ 14, 15, 17, 26

*Susan B. Anthony List v. Driehaus*,
    573 U. S. 149 (2014) ............................................................................. 23, 24, 25

*Thomas v. Peterson*,
    753 F.2d 754 (9th Cir. 1985) ............................................................................. 14

*Trump v. New York*,
    141 S.Ct. 530 (2020) .......................................................................................... 15

PLAINTIFFS' OPPOSITION TO
MOTIONS TO DISMISS  - v -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

*United Steel v. Mine Safety & Health Admin.*,
    925 F.3d 1279 (D.C. Cir. 2019) ...............................................................18

*Wash. Toxics Coal. v. U.S. Dep't of Interior*
    457 F. Supp. 2d 1158 (W.D. Wash. 2006).............................................19

*W. Oil & Gas Ass'n v. Envtl. Prot. Agency*,
    633 F.2d 803 (9th Cir. 1980) .................................................................28

*W. Watersheds Project v. Kraayenbrink*,
    632 F.3d 472 (9th Cir. 2011) ........................................................ *passim*

*State of California ex rel. Water Resources Bd. v. FERC*,
    966 F.2d 1541 (9th Cir. 1992) ...............................................................27

*Whitman v. Am. Trucking Ass'ns*,
    531 U.S. 457 (2001).................................................................................27

*Wild Virginia et al. v. Council on Envtl. Quality et al.*,
    No. 20-00045-JPJ-PMS (W.D. Va.) ...................................................1, 9

*WildEarth Guardians v. Provencio*,
    923 F.3d 655 (9th Cir. 2019) ...................................................................8

*WildEarth Guardians v. U.S. Dep't of Agric.*,
    795 F.3d 1148 (9th Cir. 2015) ...............................................................23

*Wilderness Society v. Rey*,
    622 F.3d 1251 (9th Cir. 2010) ...............................................................15

**Federal Statutes**

Administrative Procedure Act,
    5 U.S.C. § 551 *et seq.*................................................................. *passim*

Endangered Species Act,
    16 U.S.C. § 1531 *et seq.*..................................................1, 7, 27, 29
    16 U.S.C. § 1536......................................................................4, 12

National Environmental Policy Act,
    42 U.S.C. § 4321 *et seq.*............................................................ *passim*
    42 U.S.C. § 4223.......................................................................4

**Regulations**

40 C.F.R. pt. 1500 (1978) ..............................................................2

40 C.F.R. § 1500.2(d) (1978)........................................................17

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

40 C.F.R. §§ 1503.3(a)–(b) ................................................................................17

40 C.F.R. § 1506.1(b) ........................................................................................23

40 C.F.R. § 1506.13 ...........................................................................................19

40 C.F.R. § 1507.3 .............................................................................................20

40 C.F.R. § 1507.3(a), (b) ...................................................................19, 23, 30

40 C.F.R. § 1508.1(q)(1)(i)–(vii) ................................................................17, 20

**Federal Register**

82 Fed. Reg. 40,463 (Aug. 24, 2017) ..................................................................3

82 Fed. Reg. 43,226 (Sept. 14, 2017) ..................................................................3

85 Fed. Reg. 43,304 (July 16, 2020) ......................................................3, 20, 30

85 Fed. Reg. 74,640 (Nov. 23, 2020) ................................................................20

85 Fed. Reg. 78,197 (Dec. 4, 2020) ..................................................................20

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ........................................................................................5

*Redline of Final Revisions to the National Environmental Policy Act* (July 15,
    2020), *available at* https://www.whitehouse.gov/wp-content/uploads/
    2020/01/Final-Rule-Redline-of-1978-CEQRegulations.pdf (last visited Jan.
    11, 2021) .........................................................................................................4

Remarks on Proposed National Environmental Policy Act Regulations (Jan. 9,
    2020), *available at* https://www.whitehouse.gov/briefings-
    statements/remarks-president-trump-proposed-national-environmentalpolicy-
    act-regulations/ (last visited Jan. 11, 2021) ...................................................4

White House Press Release, July 16, 2020, *available at*
    https://www.whitehouse.gov/wp-content/uploads/2020/01/20200716Final-
    NEPAPress-Release.pdf (last visited Jan. 11, 2021) .....................................21

PLAINTIFFS' OPPOSITION TO
MOTIONS TO DISMISS  - vii -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

INTRODUCTION

In this case, twenty-one organizations challenge the Trump administration's 2020 sweeping overhaul of regulations implementing the National Environmental Policy Act ("NEPA"). Plaintiffs are a diverse coalition of national and regional environmental justice, outdoor recreation, public health, and conservation organizations that rely on NEPA to protect their varied interests. Members of each of the Plaintiff groups live, work, study, volunteer, and recreate in areas where NEPA has been, is being, and will be applied. Each group and hundreds of thousands of their individual members participated in the rulemaking process for the 2020 NEPA regulations ("Final Rule").

Despite Plaintiffs' focus, dedication, and years of advocacy, education, and outreach related to NEPA, federal defendant Council on Environmental Quality ("CEQ") has moved to dismiss this case on standing and ripeness grounds.[1] CEQ's motion is based on fundamental misrepresentations of both Plaintiffs' complaint and claims, and of the governing law in this Circuit. Plaintiffs have not brought a challenge to the future implementation of the Final Rule. Instead, the claims in this case center on the significant procedural and substantive violations inherent in the promulgation of the Final Rule itself.

CEQ's arguments to the contrary have no merit. Concerning standing, the harms from failing to comply with NEPA, the Endangered Species Act ("ESA"), and the Administrative

---

[1] CEQ filed the same motion in the related case brought by 21 states, the District of Columbia, the Territory of Guam, and several cities, counties, and state agencies, *States of California et al. v. Council on Envtl. Quality et al.,* No. 20-06057-RS. The Final Rule has been challenged in three other cases as well, with CEQ pursuing similar motions to dismiss in each case: *Wild Virginia et al. v. Council on Envtl. Quality et al.*, No. 20-00045-JPJ-PMS (W.D. Va.) (motion to dismiss denied Sept. 21, 2020); *Envtl. Justice Health Alliance et al. v Council on Envtl. Quality et al.*, No. 20-06143-CM (S.D.N.Y.) (motion to dismiss due Jan. 29, 2021); *Iowa Citizens for Cmty. Improvement et al. v. Council on Envtl. Quality et al.*, No. 20-02715-TJK (D.D.C.) (briefing completed on motion to dismiss Dec. 1, 2020).

PLAINTIFFS' OPPOSITION TO
MOTIONS TO DISMISS  - 1 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

1   Procedure Act ("APA") prior to issuance of the Final Rule were immediate upon the rule's

2   issuance, contradicting both CEQ's standing and ripeness arguments.  Substantively, the Final

3   Rule is in effect and already harming Plaintiffs and the interests they represent; CEQ's argument

4   that Plaintiffs' harms and risks of harm lack the required imminence is simply wrong.  Regarding

5   ripeness, no further factual development is necessary for this Court's review of the purely legal

6   issues raised in the complaint, and Plaintiffs and the areas they love and live on are being and

7   will continue to be harmed by withholding judicial review now.  The Court should deny CEQ's

8   motion to dismiss.[2]

9                                                BACKGROUND

10          When Congress enacted NEPA, 42 U.S.C. § 4321 *et seq.*, it issued a sweeping declaration

11  of values and a call to action, centering the protection of human health and the environment in all

12  federal agency decisions.  NEPA instituted a national policy of "look before you leap" by

13  requiring all federal agencies to carefully analyze and disclose to the public the potential

14  environmental impacts of, and feasible alternatives to, federal agency actions.  *Id*. § 4332(c).

15          Since 1978, regulations promulgated by CEQ, an agency created by NEPA within the

16  executive office of the President, have guided every federal agency's implementation of NEPA.

17  *See* 40 C.F.R. Part 1500 (1978).  CEQ's regulations codified early judicial precedent interpreting

18  the meaning and reach of NEPA's statutory obligations and have provided the basis for a

19  substantial body of court decisions spanning over four decades.  The CEQ regulations also

20  served as the foundation for more specific regulations enacted by federal "action" agencies—

21

22

    _____

23  [2] The Court should likewise deny Defendant-Intervenors American Farm Bureau Federation *et
24  al.* Motion to Dismiss, ECF No. 44, which raises duplicative arguments.

25  PLAINTIFFS' OPPOSITION TO
    MOTIONS TO DISMISS  - 2 -
26

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

from the U.S. Forest Service to the Federal Energy Regulatory Commission—to implement their particular missions.

In the summer of 2017, however, President Trump began an effort to reinterpret and restrict NEPA's application, issuing Executive Order 13807, *Establishing Discipline and Accountability in the Environmental Review and Permitting Process for Infrastructure Projects*, 82 Fed. Reg. 40,463 (Aug. 24, 2017).  The Executive Order emphasized an alleged need for greater "efficiency" in environmental reviews of infrastructure projects, defined to include pipelines, energy production and generation, and electricity transmission.  The Executive Order noted the importance of "using CEQ's authority to interpret NEPA to simplify and accelerate the NEPA review process" and sought "expedited environmental review for the development of energy infrastructure projects."  *Id.* at 40,468.  Shortly thereafter, CEQ announced its intention to review its existing NEPA regulations to identify changes needed to "update and clarify" them. 82 Fed. Reg. 43,226 (Sept. 14, 2017).

The resulting 2020 comprehensive regulatory rewrite challenged here put an end to the long history of continuity of NEPA interpretation.  Over the vociferous objections of states, members of Congress, a myriad of conservation, environmental justice, and public health organizations, and the general public, CEQ issued a final rule dramatically changing the entirety of its NEPA regulations.  *Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act; Final Rule*, 85 Fed. Reg. 43,304 (July 16, 2020). Interior Secretary David Bernhardt called the Final Rule "the most significant deregulatory

PLAINTIFFS' OPPOSITION TO
MOTIONS TO DISMISS  - 3 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

proposal [the Trump Administration] ultimately implement[ed]."[3]  The amendments were

radical; redline changes to the regulations run for 66 pages.[4]

   In its zeal to hobble NEPA, however, CEQ cut many corners, and the process undertaken

by CEQ in promulgating the Final Rule was fundamentally flawed and unlawful.  For example,

CEQ failed to consider and disclose the significant environmental impacts from the promulgation

of these regulations in violation of NEPA itself.  The Final Rule is a major federal action subject

to NEPA; it does not qualify for categorical exclusion from NEPA compliance; and it affects the

human environment by undermining congressional statutory purpose and provisions.

Accordingly, a full environmental impact statement, or at the least an environmental assessment,

analyzing both impacts and alternatives, was required but not conducted.  42 U.S.C. § 4223.

   Similarly, although the Final Rule easily triggered CEQ's consultation duties under ESA

Section 7 because it "may affect" ESA-listed species and critical habitat, CEQ failed to discharge

those duties.  Section 7 consultation provides a vital check on the biological impacts and risks

that stem from regulatory actions, like the promulgation of the Final Rule.  Finally, the Final

Rule lacked a reasoned basis for departure from longstanding agency practice and failed to

grapple with extensive record evidence that the rule would cause environmental harm and was

inconsistent with the letter and spirit of NEPA.  As such, the Rule is arbitrary and capricious

under the APA, 5 U.S.C. § 551 *et seq.*  These are weighty failures that render the Final Rule

---

[3] Remarks on Proposed National Environmental Policy Act Regulations (Jan. 9, 2020), *available at* https://www.whitehouse.gov/briefings-statements/remarks-president-trump-proposed-national-environmentalpolicy-act-regulations/ (last visited Jan. 11, 2021).

[4] Council on Environmental Quality, *Redline of Final Revisions to the National Environmental Policy Act* (July 15, 2020), *available at* https://www.whitehouse.gov/wp-content/uploads/2020/01/Final-Rule-Redline-of-1978-CEQRegulations.pdf (last visited Jan. 11, 2021).

PLAINTIFFS' OPPOSITION TO
MOTIONS TO DISMISS  - 4 -

*Earthjustice*
810 Third Avenue, Suite 610
Seattle, WA  98104-1711
(206) 343-7340

1    unlawful, and they occurred the moment CEQ finalized the Rule without following procedures

2    proscribed by law.

3         Substantively, the Final Rule upended virtually every aspect of NEPA and its

4    longstanding practice, contradicted decades of court interpretations of NEPA's mandates, and

5    undercut the reliance placed on NEPA by the public, decision-makers, and project proponents.

6    The Final Rule limited the scope of actions to which NEPA applies, eviscerated the thorough

7    environmental analysis and alternative development that lies at the statute's heart, reduced the

8    public's ability to participate in federal agency decisionmaking, and sought to limit judicial

9    review of agency NEPA compliance.  These changes violated the text and purpose of NEPA, and

10   the imminent risk of harm to Plaintiffs underscores Plaintiffs' standing to bring this litigation.

11                                STANDARD OF REVIEW

12        Under Fed. R. Civ. P. 12(b)(1), a defendant may challenge a plaintiff's jurisdictional

13   allegations facially, by accepting the truth of the plaintiff's allegations but asserting that they "are

14   insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer,* 373

15   F.3d 1035, 1039 (9th Cir. 2004).[5]  To resolve such a facial attack, this Court must accept the

16   plaintiffs' allegations as true and draw all reasonable inferences in plaintiffs' favor.  *Leite v.*

17   *Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  At the pleading stage, the district court

18   "assume[s] the truth of the facts alleged in plaintiffs' complaint, as well as those supplemented in

19   plaintiffs' affidavits, and construe[s] the complaint in their favor." *Fair Hous. in Huntington*

20   *Comm. Inc. v. Town of Huntington, N.Y.*, 316 F.3d 357, 362 (2d Cir. 2003); *see also Evans v.*

21

22   _____

23   [5] "By contrast, in a factual attack, the challenger disputes the truth of ... allegations that, by
     themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at

24   1039.  Here CEQ and Defendant-Intervenors have launched a facial attack.

25   PLAINTIFFS' OPPOSITION TO                              *Earthjustice*
                                                            *810 Third Avenue, Suite 610*
26   MOTIONS TO DISMISS  - 5 -                              *Seattle, WA  98104-1711*
                                                            *(206) 343-7340*

*B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir. 1999) (the district court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation and citation omitted).  Additionally, in reviewing plaintiffs' standing, the Court does not decide the merits and must assume plaintiffs would be successful in their claims. *City of Waukesha v. Envtl. Prot. Agency*, 320 F.3d 228, 235 (D.C. Cir. 2003); *Legal Aid Soc'y of Alameda Cnty. v. Brennan*, 608 F.2d 1319, 1333 n.27 (9th Cir. 1979).

ARGUMENT

CEQ raises two arguments in its motion to dismiss, and both fail.  First, Plaintiffs have standing to bring their procedural and substantive claims now.  The Court's standing inquiry focuses on <u>who</u> is bringing the action.  The standing requirements of injury, causation, and redressability exist to ensure that plaintiffs have a particularized interest and specific harm or risk of harm that can be redressed by the Court.  Plaintiffs here easily meet the injury-in-fact requirement.  Promulgation of the Final Rule immediately harmed members of the Plaintiff groups where procedural safeguards that ensure meaningful environmental, public health, and endangered species review went missing.  The Final Rule is in effect now and continues to direct federal agencies and their environmental reviews, and these facts satisfy the imminent risk of harm requirement for injury-in-fact.

CEQ's ripeness argument fares no better.  The Court's ripeness inquiry focuses on <u>when</u> the action is brought.  That inquiry evaluates whether the facts are final and clear enough for the Court to rule without further factual development.  Plaintiffs' complaint meets these standards as well.  The challenged rules are final; they are already being used by CEQ and other federal

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

agencies; this case presents purely legal issues based on an administrative record and no further factual development is relevant; and Plaintiffs would be harmed by a delay in judicial review.

CEQ's motion boils down to an argument that unlawful regulations are unreviewable by this Court except in the context of a particular action where those regulations are applied. This is not the law under either a standing or ripeness analysis.

I.    PLAINTIFFS HAVE STANDING TO CHALLENGE THE FINAL RULE.

To establish standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1079 (9th Cir. 2015) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000)). To demonstrate standing to bring a procedural claim—such as one alleging a NEPA violation, ESA failure to consult, or arbitrary and capricious decisionmaking[6]—a plaintiff "must show that the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." *W. Watersheds Project v. Kraayenbrink,* 632 F.3d 472, 485 (9th Cir. 2011). Plaintiffs easily meet this test.

---

[6] Plaintiffs' claims that the Final Rule is arbitrary and capricious under the APA fall under this relaxed standing standard for "procedural" claims. As this Court recently found, "where plaintiffs allege that an agency's action is arbitrary and capricious under § 706(2)(A) because of the agency's failure to follow the basic procedural requirement of providing any reasoned explanation whatsoever, a procedural standing analysis is appropriate." *City and Cnty. of San Francisco v. Whitaker*, 357 F. Supp. 3d 931, 942 (N.D. Cal. 2018) (quotation and citation omitted); *see also Encino Motorcars, LLC v. Navarro*, 136 S.Ct. 2117, 2125 (2016) ("one of the basic procedural requirements of administrative rulemaking is that an agency must give adequate reasons for its decisions….") (emphasis added).

PLAINTIFFS' OPPOSITION TO
MOTIONS TO DISMISS  - 7 -

1    Organizations can establish standing through representation of their members' concrete

2    interests when those interests are germane to the organization's purpose. *Laidlaw Envtl. Servs.,*

3    528 U.S. at 181. For an environmental interest to be "concrete," there must be a "geographic

4    nexus between the individual asserting the claim and the location suffering an environmental

5    impact." *Kraayenbrink*, 632 F.3d at 485. "[E]nvironmental plaintiffs adequately allege injury in

6    fact when they aver that they use the affected area and are persons for whom the aesthetic and

7    recreational values of the area will be lessened by the challenged activity." *Laidlaw Envtl.*

8    *Servs.,* 528 U.S. at 183. Once plaintiffs seeking to enforce a procedural requirement establish a

9    concrete injury, "the causation and redressability requirements are relaxed." *Kraayenbrink,* 632

10   F.3d at 485. "Plaintiffs alleging procedural injury must show only that they have a procedural

11   right that, if exercised, <u>could</u> protect their concrete interests." *Salmon Spawning & Recovery*

12   *Alliance v. Gutierrez,* 545 F.3d 1220, 1226 (9th Cir. 2008) (emphasis in original).

13   Finally, a plaintiff bringing suit under the APA for a violation of NEPA must show that

14   the alleged injury falls within the statute's "zone of interests." *Kootenai Tribe of Idaho v.*

15   *Veneman,* 313 F.3d 1094, 1111–12 (9th Cir. 2002). Non-profit conservation, outdoor recreation,

16   public health, and environmental justice groups fall squarely within NEPA's zone of interests.

17   *WildEarth Guardians v. Provencio*, 923 F.3d 655, 668 (9th Cir. 2019).[7]

18       A.    <u>Plaintiffs Have Unique and Continuing Interests in Specific Geographic Areas</u>
              <u>Where NEPA Applies.</u>

19
20   The judicial standing inquiry focuses on the party seeking to present a claim in federal

21   court. *See Flast v. Cohen*, 392 U.S. 83, 99 (1968). The "presence of one party with standing is

22

23   [7] The zone of interests test does not apply to ESA claims, *Bennett v. Spear*, 520 U.S. 154, 164
     (1997), although Plaintiffs' interests in protecting imperiled species clearly meet this standard as
24   well. *See EPIC v. Simpson Timber Co*. 255 F.3d 1073, 1079 (9th Cir. 2001).

25   PLAINTIFFS' OPPOSITION TO
     MOTIONS TO DISMISS  - 8 -

26

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum For Academics and Inst. Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006); *see Brown v. City of Los Angeles*, 521 F.3d 1238, 1240 n.1 (9th Cir. 2008) ("[T]he presence in a suit of even one party with standing suffices to make a claim justiciable").  Plaintiff groups presented extensive standing allegations in the First Amended Complaint, ECF 22, ¶¶ 9–160, demonstrating that they each have members, staff members, and/or board members with concrete personal, recreational, aesthetic, and professional interests in specific geographic areas where federal agency actions and decisions occur, where threatened and endangered plants and animals are found, and where non-federal projects that require federal involvement, approval, and/or funding have been and will be proposed.  This type of facial challenge to a federal regulation is nothing new.  Indeed, the District Court for the Western District of Virginia has already denied the same motion to dismiss filed by CEQ in a similar challenge to the Final Rule.  Order Denying Motion to Dismiss, *Wild Virginia v. CEQ*, No. 20-00045-JPJ-PMS (W.D. Va. Sept. 21, 2020).

Plaintiffs have a deep commitment to specific geographical areas where they live, work, recreate and have definite plans to continue those actions, across the nation, including in Alaska, Arizona, Arkansas, California, Colorado, Florida, Maryland, Minnesota, Nevada, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Rhode Island, Utah, Texas, Virginia, Washington, Wisconsin, and Wyoming.  For example, Alaska Community Action on Toxics works primarily with Alaska Native communities that rely on the land and ocean for physical, spiritual, and cultural sustenance, with Native Alaskan Board members whose family diet comes from the ocean.  First Amended Complaint ¶¶10, 15.  Friends of the Earth member Verner Wilson and his family are Alaskan "subsistence fishers who rely on the wild salmon runs every year." *Id.* ¶91.  Wilderness Society member Robert Thompson is also a native Alaskan

PLAINTIFFS' OPPOSITION TO
MOTIONS TO DISMISS  - 9 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

1   who doesn't want his "hunting grounds to turn into an oil field.  We are not doing enough, but

2   under the new NEPA rules, the government will do even less because it won't even analyze the

3   climate and other cumulative impacts."  Declaration of Robert Thompson, SD 317, ¶20.[8]

4   California Wilderness Coalition members regularly recreate and have definite plans to continue

5   to visit National Forests in California, First Amended Complaint ¶28, Declaration of Maureen

6   Forney ¶5, while Center for Biological Diversity member and staff member Ileene Anderson,

7   who drafted NEPA documents as a consulting botanist, is harmed "including by impairing [her]

8   ability to evaluate and comment on the indirect and cumulative impacts of projects like a

9   pending proposal to undertake exploratory drilling for gold on the Conglomerate Mesa" in the

10   California desert.  First Amended Complaint ¶¶34–36, Declaration of Ileene Anderson, SD 001,

11   ¶¶9–14.

12        Ocean Conservancy member Captain Dave Monti, charter boat captain and guide, "relies

13   on NEPA reviews and public processes to be informed and involved in federal decisions

14   affecting the areas he fishes."  First Amended Complaint ¶114.   WE ACT works for

15   environmental justice in communities of color and low-income communities in New York City,

16   where cumulative impacts of air pollution are disproportionally high and "cumulative impacts

17   are life-or-death impacts for already vulnerable communities."  *Id.* ¶138.  Western Watersheds

18   Project member Dr. Jason A. Lillegraven "has camped and recreated extensively on federal

19   public lands throughout Wyoming, usually in conjunction with his geological and

20   paleontological research" and he has participated in NEPA processes as an expert and a

21

22   ─────────────────

23   [8] Plaintiffs' concurrently submitted standing declarations, from members of each Plaintiff group
     further attesting to the interests alleged in the First Amended Complaint, are identified by first

24   page number ("SD #") and internal paragraph.

25   PLAINTIFFS' OPPOSITION TO                    *Earthjustice*
     MOTIONS TO DISMISS  - 10 -                   *810 Third Avenue, Suite 610*
26                                                *Seattle, WA  98104-1711*
                                                  *(206) 343-7340*

1  community member.  *Id.* ¶145.  National Wildlife Federation member and staff member Melissa

2  Samet recreates throughout California in Point Reyes National Seashore in Marin County, Mount

3  Tamalpais in Marin County, Yosemite National Park in Mariposa County, Humboldt Redwoods

4  State Park in Humboldt County, Sequoia National Park in Tulare County, Monterey Bay in

5  Monterey County, and Point Lobos State Natural Reserve in Monterey County.  *Id.* ¶108.

6        Contrary to CEQ's presentation, Plaintiffs' interests are neither abstract nor speculative.

7  Fed. Br. at 19.  Plaintiffs' members have detailed their deep and committed interests in the very

8  lands they live on (*see, e.g.,* First Amended Complaint, ACAT ¶15, Fort Berthold POWER

9  ¶¶75–87); the air they breathe (*see, e.g.,* First Amended Complaint, WE ACT ¶¶131, 138); lands

10  and waters where they recreate (*see, e.g.,* First Amended Complaint, ACAT ¶13, California

11  Wilderness Coalition ¶29, Center for Biological Diversity ¶¶37–38, National Wildlife Federation

12  ¶103, SUWA ¶¶ 125, 127, Wilderness Society ¶149, Declarations of Michael J. Bartlett, SD 026;

13  Gustav Bekker, SD 036; Joseph Bower, SD 066); where they have professional and commercial

14  interests (*see, e.g.,* First Amended Complaint, American Alpine Club ¶¶18, 23, Center for Food

15  Safety ¶52, Ocean Conservancy ¶114, Declaration of Ross Barkhurst, SD 018, ¶¶6–7); and areas

16  impacted by projects that are federally funded (*see, e.g.,* First Amended Complaint, EPIC ¶67,

17  Food and Water Watch ¶73).  These interests go well beyond generalized harm and are sufficient

18  to demonstrate standing in this case.

19        B.    Harms Stemming from Plaintiffs' Procedural Claims Are Immediate.

20        CEQ argues that Plaintiffs must challenge "a concrete application of the 2020 Rule" in

21  order to bring this facial challenge.  Fed. Br. at 27.  This is not the law.

22        Plaintiffs asserting procedural injury must establish that "(1) the [defendants] violated

23  certain procedural rules; (2) these rules protect [plaintiffs'] concrete interests; and (3) it is

24  reasonably probable that the challenged action will threaten their concrete interests."  *Citizens for*

25  PLAINTIFFS' OPPOSITION TO
26  MOTIONS TO DISMISS  - 11 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

*Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969–70 (9th Cir. 2003) (*Citizens I*). Plaintiffs satisfy this standard.  Plaintiffs allege that CEQ violated procedural rules requiring (1) environmental analysis under NEPA (First Claim for Relief); (2) consultation with federal wildlife experts under ESA § 7 (Sixth Claim for Relief); and (3) rational explanations for revisions in the Final Rule (Second and Third Claims for Relief).  These procedures protect Plaintiffs' concrete interests in the environment, public health, and environmental justice, and the injury to those interests occurred immediately upon issuance of the Final Rule without following those procedures.

The Ninth Circuit has ruled that the allegations of procedural harm like those plaintiffs make here are sufficient to establish standing.  In *Citizens I*, plaintiffs brought NEPA and ESA challenges to a nationwide forest management rule that had not yet been applied in developing any forest plans or site-specific projects.[9]  The Ninth Circuit held that environmental plaintiffs had standing to challenge the rule on its face and had no obligation to "assert that any specific injury will occur in any specific national forest." *Citizens I*, 341 F.3d at 971.  The Ninth Circuit explicitly rejected the assertion that the rule was too many steps removed from on-the-ground harm to plaintiffs, noting that it had repeatedly rejected this contention and heard challenges to programmatic authorizations that constituted the first step in the chain of causation. *Id.* at 973. As in *Citizens I*, the Plaintiff groups here are injured by CEQ's procedural failures under NEPA and the ESA.

Under the concrete interest test, an environmental plaintiff need not assert that any specific injury will occur to any specific species or habitat; rather, "the asserted injury is that

---

[9] Even more steps removed from on-the-ground harm than here, as federal agencies are already applying the Final Rule.  *See infra* fn. 12, 13 and accompanying text.

PLAINTIFFS' OPPOSITION TO
MOTIONS TO DISMISS  - 12 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

environmental consequences might be overlooked as a result of deficiencies in the government's analysis under environmental statutes." *Citizens I*, 341 F.3d at 971 (quoting *Salmon River Concerned Citizens v. Robertson,* 32 F.3d 1346, 1355 (9th Cir.1994)); *California ex rel. Lockyer v. U.S. Dep't of Agric.*, 575 F.3d 999 (9th Cir. 2009) (*Lockyer II*) (requiring the preparation of an EIS for nationwide rules pertaining to the management of roadless areas on federal lands); *Kraayenbrink*, 632 F.3d at 491 (requiring the preparation of an EIS for nationwide regulations issued by the Bureau of Land Management regarding procedures for assessing rangeland health); *Shearwater v. Ashe*, 2015 WL 4747881, at *14–24 (N.D. Cal. 2015) (requiring compliance with NEPA for the promulgation of nationwide regulations setting forth procedures regulating the "take" of raptors under the Bald and Golden Eagle Protection Act); *California v. Bernhardt*, 472 F. Supp. 3d 573, 618–30 (N.D. Cal. 2020) (requiring the preparation of an EIS for a nationwide regulations setting forth procedures for regulating methane waste from oil and gas development on federal lands).[10]

It requires no speculation to conclude that the loss of procedural safeguards establishes standing because such a loss increases the risk of uninformed decisionmaking that affects Plaintiffs' concrete environmental interests.  As Justice Antonin Scalia explained,

> The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy.  Thus, under our case law, one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement

---

[10] Nor should use of the term "procedural injury" be taken to mean a minimized type of harm. Plaintiffs' NEPA and ESA claims are based on harm to the environment.  As explained in *Sierra Club v. Marsh*, 872 F.2d 497, 500 (1st Cir. 1989) ("the harm consists of the added risk to the environment that takes place when governmental decisionmakers make up their minds without having before them an analysis (with prior public comment) of the likely effects of their decision upon the environment") (emphasis in original).

PLAINTIFFS' OPPOSITION TO
MOTIONS TO DISMISS  - 13 -

1    will cause the license to be withheld or altered, and even though the dam will not
2    be completed for many years.

3    *Lujan*, 504 U.S. at 572 n.7.  In *Citizens I*, the Ninth Circuit held that plaintiffs' inability to

4    comment on potential NEPA analysis supporting the forest planning regulations (because the

5    Forest Service prepared no NEPA analysis at all) "undermines the very purpose of NEPA, which

6    is to "ensure[ ] that federal agencies are informed of environmental consequences before making

7    decisions and that the information is available to the public."  341 F.3d at 970.  With respect to

8    the ESA consultation claim, the Ninth Circuit has explained, "[i]f a project is allowed to proceed

9    without substantial compliance with those procedural requirements, there can be no assurance

10   that a violation of the ESA's substantive provisions will not result."  *Thomas v. Peterson*, 753

11   F.2d 754, 764 (9th Cir. 1985).  "It is not the responsibility of the plaintiffs to prove, nor the

12   function of the courts to judge, the effect of a proposed action on an endangered species when

13   proper procedures have not been followed."  *Id*. at 765.

14         CEQ misrepresents the U.S. Supreme Court decision in *Summers v. Earth Island*

15   *Institute*, 555 U.S. 488 (2009).  Fed. Br. at 19.  In *Summers,* conservation groups settled part of

16   their case that presented as-applied harm and then continued to challenge the "regulation in the

17   abstract" based on standing declarations that failed to identify any connection between areas that

18   plaintiffs used and the nationwide application of the regulations.  *See Ctr. for Biological*

19   *Diversity v. Kempthorne*, 588 F.3d at 707 (citing *Summers*, 555 U.S. at 494).  The *Summers*

20   plaintiffs alleged that application of the challenged forestry regulations meant they would have

21   no opportunity to file comments on particular projects, which resulted in procedural injury.  555

22   U.S. at 496.  Their alleged injury was the inability to comment on later projects, not a procedural

23   injury from federal defendants' promulgation of the challenged regulations.  *Id.* at 496–97.  Not

25   PLAINTIFFS' OPPOSITION TO
26   MOTIONS TO DISMISS  - 14 -

1    so here, where the procedural injuries under NEPA, the ESA, and the APA happened the

2    moment CEQ issued the Final Rule in violation of procedures those laws required.

3        The U.S. Supreme Court's recent opinion in *Trump v. New York*, 141 S.Ct. 530 (2020)

4    confirms this distinction.  The plaintiffs there challenged a presidential memorandum about the

5    census and citizenship, and the Supreme Court found that plaintiffs failed to show standing for

6    reasons that are inapplicable here.  Notably, the census count at issue was complete, which meant

7    the dispute focused on the next stage, the apportionment process, which had barely begun.  *Id.* at

8    535–6.  Here, the Final Rule is the focus of this dispute, not later actions of any federal agencies.

9    Moreover, the Supreme Court in *Trump* cited to *Summers* to differentiate between actions that

10   might be taken, and the policy itself "in the abstract."  *Id.* at 536.  Here, Plaintiffs challenge the

11   Final Rule itself and the harms and legal violations that occurred immediately upon its

12   finalization.  There is no further "Executive Branch[] decisionmaking process [to] run its

13   course," *id.*, and there is no "policymaking properly left to elected representatives."  The

14   rulemaking process in the present case is complete, and Plaintiffs may challenge its procedural

15   failings now because they have been injured by the failings that occurred during its

16   promulgation.

17       CEQ also looks to *Wilderness Society v. Rey*, 622 F.3d 1251 (9th Cir. 2010) for a holding

18   it cannot sustain.  Fed. Br. at 21–22.  There, plaintiffs brought a facial challenge to revised Forest

19   Service regulations for violating the Decisionmaking and Appeals Reform Act, not NEPA, the

20   ESA, or the APA.  The Ninth Circuit found the plaintiffs lacked standing because the lone

21   supporting declarant stated only a vague desire to return to the area where the regulations would

22   be applied.  622 F.3d at 1256; *see also id.* at 1257 n.2 (noting that "[a]t oral argument, TWS's

23

24

25   PLAINTIFFS' OPPOSITION TO
26   MOTIONS TO DISMISS  - 15 -

counsel acknowledged that an amended declaration or a new declaration in a follow-on suit might well remedy any deficiency").

In contrast, Plaintiffs here have submitted 40 declarations, linking the Final Rule to particular places and unique interests, and asserting direct and palpable harms to those interests through a weakened environmental review process.  Plaintiffs' declarants have demonstrated with specificity their use and enjoyment of precise geographic areas affected by the Final Rule, their concrete plans to return to those areas and continue personal and professional activities there, and the link between their harm and upcoming or ongoing agency action that relies on the new regulations.  Declarants attest to their longstanding actions to protect places and their way of life.  *See, e.g.,* First Amended Complaint ¶80 (Fort Berthold POWER member Joletta Bird Bear lives on federal lands and "is harmed by NEPA short-cuts that fast track oil and mining extraction and the laying of oil pipelines on federal lands."); ¶86 (Fort Berthold POWER member Lisa DeVille "has relied heavily on the NEPA process to voice her concern over impacts caused by energy development on the land where she lives … NEPA gives communities like Fort Berthold a voice in the decisionmaking process surrounding energy development and helps the community protect indigenous significant historical and cultural sites, burial sites, endangered species, and water."); ¶21 (American Alpine Club member Dr. Len Necefer "has relied heavily on the NEPA process to voice concern over impacts caused by energy development on climbing and cultural resources in resource management planning. … Not only does Dr. Necefer visit Bears Ears National Monument to enjoy the world-renowned rock climbing in Indian Creek, an area with hundreds of documented climbing routes, but also the area is a sacred site for the Navajo Nation and contains numerous cultural resources."); ¶150 (longtime Wilderness Society member Rebecca Rom "lives within the Superior National Forest

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

near Ely, Minnesota and in close proximity to the Boundary Waters.  Ms. Rom has definite plans

to continue to explore the Boundary Waters and Voyageurs in 2020 and beyond.  For her entire

adult life, Ms. Rom has been heavily engaged in NEPA processes involving activities affecting

these areas"); ¶155 (Winter Wildlands Alliance member "Mr. Bekker has worked for years to

advocate for backcountry skiing and preservation of winter wildlands on the Okanogan-

Wenatchee National Forest, where he regularly skis during the winter months.").  *See also*

*Cottonwood*, 789 F.3d at 1080 (finding that plaintiff's similarly detailed declarations presented a

"clear contrast" to the affidavit in *Summers*).[11]

This Circuit has repeatedly held that where conservation, environmental justice, public

health, and recreational organizations facially challenge federal regulations and guidance that

fundamentally change the way federal agencies comply with the law, member declarations

successfully demonstrate standing.  For example, environmental organizations prevailed in a

challenge to the 2005 nationwide repeal of the Roadless Rule, overcoming standing and ripeness

---

[11] CEQ also attempts to raise the standing bar by stating, without explanation, that the Plaintiffs
are not the "object of the government action or inaction [they] challenge[]" and arguing that this
makes standing "substantially more difficult to establish."  Fed. Br. at 19.  The Court should
reject this argument, for there are multiple ways that Plaintiffs and their members are "objects
of" NEPA and the Final Rule.  For example, the Final Rule directly applies to the Plaintiff
groups and their members by requiring their comments be more specific and technical, with an
exhaustion bar as the penalty.  40 C.F.R. §§ 1503.3(a)–(b); 1500.3(b)(3).  More broadly, the
1978 NEPA regulations, and NEPA itself, provided the Plaintiffs and their members with
valuable procedural benefits.  *See* 40 C.F.R. § 1500.2(d) (1978) (purpose of the regulations was
to "Encourage and facilitate public involvement in decisions which affect the quality of the
human environment.").  Yet the Final Rule now removes those protections.  For example, the
Final Rule exempts loan guarantees funding industrial feedlots, eliminating NEPA procedures
that promote transparency, accountability, and better decisionmaking.  40 C.F.R. §
1508.1(q)(1)(vii).  The Final Rule takes away many other procedural protections from which
Plaintiffs have long benefitted, such as the requirement that agencies analyze indirect and
cumulative effects like climate change in their decisionmaking.  Plaintiffs have previously
enforced these protections in court.  *See, e.g.,* Declarations of Neal Clark, SD 075, ¶8; Jonathan
Goldstein, SD 131, ¶13; Joy Maria Oakes, SD 248, ¶13.

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

1    arguments.  *California ex rel. Lockyer v. U.S. Dep't of Agric.*, 459 F. Supp. 2d 874, 885 (N.D.

2    Cal. 2006) (*Lockyer I*) (plaintiffs "have shown their concrete interest by submitting numerous

3    declarations from organizational members and State officials regarding their geographic

4    proximity to areas that will be affected by changed roadless area policies."); *id.* at 885 (quoting

5    from sample of declarations).  Similarly, in *Kraayenbrink*, the Ninth Circuit explained that

6    plaintiffs had standing because their declarations "establish[ed] a geographic nexus between

7    [plaintiff's] members and the locations subject to the 2006 Regulations."  *Id.* at 476; *see also*

8    *Citizens I*, 341 F.3d at 971 (finding concrete interests where plaintiffs proffered "numerous

9    affidavits covering a vast range of national forests around the country").

10          Moreover, it is commonplace for courts to hear and decide APA facial challenges to

11   regulations when the claims present pure questions of law.  *See, e.g., Natural Res. Def. Council*

12   *v. Wheeler*, 955 F.3d 68 (D.C. Cir. 2020) (facial challenge to EPA rule eliminating restrictions

13   on the use of hydrofluorocarbons); *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279

14   (D.C. Cir. 2019) (facial challenge to mine safety regulations); *Air All. Houston v. Envtl. Prot.*

15   *Agency*, 906 F.3d 1049 (D.C. Cir. 2018) (facial challenge to suspension of Chemical Disaster

16   Rule).  *California v. Azar*, 911 F.3d 558 (9th Cir. 2018) (facial challenge to interim Affordable

17   Care Act rules).

18          In each of those cases, as here, plaintiffs facially challenged a final rule.  CEQ attempts to

19   frame this case differently, incorrectly asserting that the Plaintiffs' claims challenge hypothetical

20   future projects.  Fed. Br. at 20.  To the contrary, it is not the particular application of the

21   regulations that is at issue.  The procedural injuries under NEPA, the ESA, and the APA have

22   already happened, and Plaintiffs here allege that the Final Rule itself is unlawful and harms their

23   interests.  "The regulation itself effects a significant change in the [agencies' actions], and it is

24

25   PLAINTIFFS' OPPOSITION TO
26   MOTIONS TO DISMISS  - 18 -

1   this change that is protested by Plaintiffs, not its effect on future pesticide registrations or re-

2   registrations (although it could be fairly said that Plaintiffs protest the change because of its

3   expected future effects)."  *Wash. Toxics Coal. v. U.S. Dep't of Interior*, 457 F. Supp. 2d 1158,

4   1173 (W.D. Wash. 2006) (emphasis in original).  This is precisely the shape of the challenge

5   presented here.

6          C.      Plaintiffs Also Have Standing Due to an Imminent Risk of Harm.

7          The Final Rule is in effect now.  Signed and issued on July 15, 2020 and published in the

8   Federal Register on July 16, 2020, the Final Rule became effective on September 14, 2020, 40

9   C.F.R. § 1506.13.  By its own terms, the Rule immediately controlled the NEPA procedures of

10  all federal agencies—as CEQ admits, all other agencies "must follow" the Final Rule, and where

11  there are inconsistencies, the Final Rule applies.  Fed. Br. at 2; 40 C.F.R. § 1507.3(a).  The Final

12  Rule requires all federal agencies to rewrite their own regulations to match the Rule and provide

13  no further protections or processes: except in narrow circumstances, "agency NEPA procedures

14  shall not impose additional procedures or requirements beyond those set forth in the regulations

15  in this subchapter[.]"  40 C.F.R. § 1507.3(b).  The Final Rule also expressly allowed for

16  application to NEPA reviews already in progress, making the harms even more immediate.  "An

17  agency may apply the regulations in this subchapter to ongoing activities and environmental

18  documents begun before September 14, 2020."  40 C.F.R. § 1506.13.

19         Federal agencies are already using the Final Rule to Plaintiffs' detriment.  For example,

20  the Bureau of Land Management recently applied the Final Rule in a December 2020

21  Environmental Analysis of seismic surveying in the Arctic National Wildlife Refuge.[12]

22

23

24  [12] Marsh Creek East 3-D Seismic Survey Environmental Assessment (DOI-BLM-AK-R000-2021-0001EA) at 7, *available at* https://eplanning.blm.gov/public_projects/2003258/200392048/

25  PLAINTIFFS' OPPOSITION TO
26  MOTIONS TO DISMISS  - 19 -

Declaration of Alison Flint, SD 120, ¶4.  Because the Final Rule eliminated the requirement to review cumulative impacts and changed the way alternatives are considered, the seismic EA failed to consider a full range of alternatives or "analyze reasonably foreseeable significant cumulative impacts such as long-term damage to tundra and permafrost and associated changes in hydrology, harm to polar bears already threatened by loss of sea ice from climate change, or the synergistic drilling activities that the seismic survey is designed to spur."  Flint Decl. ¶5.  The Bureau is also relying on the Final Rule's new definition of "effects" in its Greater sage-grouse analysis for the March 23, 2021, Montana Oil and Gas Lease Sale.[13]  Flint Decl. ¶8.

Additionally, the Final Rule requires agencies to rewrite their own NEPA regulations, 40 C.F.R. § 1507.3, and agencies have already begun that process.  The Department of Energy revised its NEPA regulations consistent with the Final Rule and wholly exempted authorizations of liquefied natural gas exports and imports from NEPA review.  85 Fed. Reg. 78,197 (Dec. 4, 2020).  The Department of Transportation issued a proposed rulemaking for public comment as directed by the Final Rule that largely echoes the Final Rule's requirements.  85 Fed. Reg. 74,640, 74,641 (Nov. 23, 2020).

Perhaps more importantly, under the Final Rule, there are now whole categories of actions which agencies can approve with no NEPA review at all, depriving Plaintiffs of information and any opportunity to participate.  40 C.F.R. § 1508.1(q)(1)(i)–(vii) ("Major federal action does not include the following activities or decisions…"); s*ee, e.g.,* 85 Fed. Reg. at 43,348

---

20031232/250037431/Marsh%20Creek%20East%203D%20Seismic%20Survey%20EA.pdf (last visited Jan. 8, 2021).

[13] March 23, 2021 Oil and Gas Lease Parcel Sale (DOI-BLM-MT-0000-2021-0001-EA) at 46, *available at* https://eplanning.blm.gov/public_projects/2002224/200390003/20030216/ 250036415/March%2023%202021%20Lease%20Sale%20EA%20for%20public%20comment% 2011.23.20.pdf (last visited Jan. 8, 2021).

PLAINTIFFS' OPPOSITION TO
MOTIONS TO DISMISS  - 20 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

(Farm Service Agency and Small Business Administration loans and loan guarantees exempted).
In a press release when the Final Rule was released, U.S. Secretary of Agriculture Sonny Perdue
noted he was "grateful to see the final rule includes a NEPA exemption for minor federal actions
such as our FSA loan guarantees."[14]  When actions are exempted from NEPA under the Final
Rule, there is no public notice, opportunity to comment, or even acknowledgement that a federal
action is taking place.  *See, e.g.,* First Amended Complaint ¶73 (Food and Water Watch member
Dane Schumacher relies on NEPA for notification of federal funding of factory farms that
pollute in his watershed and harm his use and enjoyment of these waters).  Under the Final Rule,
some projects affecting Plaintiffs will proceed with fewer opportunities for notice or comment;
some will proceed with no notice or analysis whatsoever; and all of them will proceed with less
thorough analysis of environmental effects that matter to Plaintiff groups.  *See, e.g.,* First
Amended Complaint ¶62 (Environmental Defense Fund member Don Schreiber, a landowner in
New Mexico, relies on NEPA for "rigorous" review of federally-managed oil and gas
development in his community, with a particular focus on cumulative impacts, a category of
effects the Final Rule no longer requires agencies to assess); ¶68 (EPIC member Trisha Lotus,
whose great-grandfather gave lands to California for a state park, understands that "[t]he
challenged rule would likely have caused this [highway] project [through the state park] to fall
outside of NEPA's bounds, as federal financing of a project is no longer deemed to cause a
project to be a 'major federal action' under NEPA"); ¶70 (Food and Water Watch "challenging a
Farm Service Agency NEPA review for a Maryland chicken factory farm because it fails to
adequately consider the cumulative impacts of agency financing of the project").

---

[14] White House Press Release, July 16, 2020, *available at* https://www.whitehouse.gov/wp-content/uploads/2020/01/20200716Final-NEPAPress-Release.pdf (last visited Jan. 11, 2021).

PLAINTIFFS' OPPOSITION TO
MOTIONS TO DISMISS  - 21 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

1    Plaintiffs are not alone in understanding the Final Rule's immediate impact.  As

2 Defendant-Intervenors explained in their motion to intervene, their environmentally harmful

3 development projects benefit from the weakened CEQ rules.  *American Farm Bureau Federation*

4 *et al.* Motion to Intervene, ECF 27 at 2; *see also id.* at 8, n.1 (calling attention to "the concrete

5 injuries that they and their members would suffer if the NEPA Rule were invalidated.").  If

6 concrete injuries to intervenors will occur if the Final Rule is removed, then it is clear that the

7 Final Rule has already caused concrete injuries to Plaintiffs.[15]

8    Moreover, the imminence component of standing is satisfied not only when a plaintiff has

9 sustained an actual injury, but also when he or she is threatened with injury.  *City of Los Angeles*

10 *v. Lyons*, 461 U.S. 95, 101–02 (1983).  As the Ninth Circuit has noted, the fact that "the injury is

11 'threatened' rather than 'actual' does not defeat the claim….  Nor need the risk of injury be

12 certain, as opposed to contingent."  *Idaho Conserv. League v. Mumma*, 956 F.2d 1508, 1515 (9th

13 Cir. 1992).  It has long been settled that "[o]ne does not have to await the consummation of

14 threatened injury to obtain preventive relief.  If the injury is certainly impending, that is enough."

15

16

17  [15] In fact, declarants for defendant-intervenors listed a variety of different ways the Final Rule
has changed the application of NEPA to certain projects, as well as the extent and depth of any

18 NEPA review.  *See* Decl. of Ryan Yates, American Farm Bureau Federation, ECF 27-1, ¶ 7
("Under regulations prior to the NEPA Rule, a farming or ranching operation also would often

19 need to obtain NEPA review in order for the farmer or rancher to receive a loan from the U.S.
Department of Agriculture's Farm Service Agency"); Decl. of Richard Moskowitz, American

20 Fuel & Petrochemical Manufacturers, ECF 27-3, ¶ 7 ("As manufacturers and refiners of fuel and
petrochemical products, AFPM's members are frequently subject to federal environmental

21 regulations requiring NEPA reviews"); Decl. of Joan Dreskin, Interstate Natural Gas Association
of America, ECF 27-7, ¶ 7 (listing multiples federal court cases where INGAA projects were

22 challenged under prior NEPA regulations that would not be challenged under the Final Rule).
All of the defendant-intervenor standing declarants highlight the changes the Final Rule made to

23 prior CEQ regulations, *see, e.g.,* Yates Decl. ¶ 8 ("The NEPA Rule will also limit consideration
of 'indirect' environmental effects and narrow consideration of 'cumulative' effects, consistent

24 with the concept of proximate cause.").

25

PLAINTIFFS' OPPOSITION TO

26 MOTIONS TO DISMISS  - 22 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

1   *Pa. v. W. Va.*, 262 U.S. 553, 593 (1923).  The U.S. Supreme Court has stated that plaintiffs need

2   not "demonstrate that it is literally certain that the harms they identify will come about" to

3   establish standing.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414, n. 5 (2013).  Instead, an

4   "allegation of future injury may suffice if the threatened injury is certainly impending, or there is

5   a substantial risk that the harm will occur."  *Susan B. Anthony List v. Driehaus*, 573 U. S. 149,

6   158 (2014) (quotation omitted).  Additionally, in this Circuit, plaintiffs have standing "to

7   challenge programmatic management direction [even] without also challenging an implementing

8   project that will cause discrete injury."  *Cottonwood*, 789 F.3d at 1081.  CEQ's argument

9   otherwise is contrary to law.

10          The lands, air, and waters the Plaintiffs' members use, live on, visit, enjoy, and depend

11   upon will be affected by ongoing and upcoming decisionmaking processes subject to the Final

12   Rule.  Plaintiffs are injured because the Final Rule removes key procedural safeguards from

13   these decisions and replaces formerly mandatory requirements with discretion.  *See Johnson v.*

14   *Allsteel*, 259 F.3d 885, 888 (7th Cir. 2001) ("the increased risk [of replacing assurance with

15   discretion] is itself an injury"); *Nat'l Wildlife Fed'n v. Hodel*, 839 F.2d 694, 708 (D.C. Cir.

16   1988).  The Rule also allows money and other resources to be irretrievably committed to a

17   particular project before the alternatives have been considered, prejudicing the consideration of

18   alternatives.  40 C.F.R. § 1506.1(b).  All of these changes applied as soon as the Rule took effect,

19   overriding any agency procedures that were inconsistent with the new Rule.  40 C.F.R. §

20   1507.3(a).  CEQ and other federal agencies are now using and applying the challenged

21   regulations.  The injuries from application of these regulations are "certainly impending."

22          D.      Plaintiffs Satisfy the Causation and Redressability Components of Standing.

23          CEQ does not seriously advance causation and redressability arguments, Fed. Br. 28, 29

24   n.14, and for good reason.  In *Lujan*, the Supreme Court noted that causation and redressability

25   PLAINTIFFS' OPPOSITION TO
     MOTIONS TO DISMISS  - 23 -

26

1   requirements are relaxed where Congress has established procedures to protect the plaintiffs'

2   interests.  504 U.S. at 572 n.7.  Plaintiffs' injuries would be redressed by vacating the unlawful

3   revised regulations.  *See WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1156 (9th

4   Cir. 2015); *see, e.g.,* Declarations of Ileene Anderson, SD 001, ¶¶14–18, 27; Neal Clark, SD 075,

5   ¶¶10–13; Tricia Cortez, SD 089, ¶19; Barbara Findley, SD 113, ¶16; Byron Harvison, SD 144,

6   ¶¶15–18; Jerome C. Kustich, SD 165, ¶¶19–20; Taylor McKinnon, SD 186, ¶¶12–15; Erik

7   Molvar, SD 205, ¶48; Len Necefer, SD 232, ¶¶6–7, 10–11; Joy Oakes, SD 248, ¶¶14, 23–25;

8   Dane Schumacher, SD 295, ¶¶18–20; Peggy Shepard, SD 303, ¶¶10–11.  That connection

9   between "the procedural step" and the "substantive result" is "[a]ll that is necessary for

10  standing."  *Envtl. Def. Fund v. Envtl. Prot. Agency*, 922 F.3d 446, 453 (D.C. Cir. 2019) (internal

11  quotation marks omitted).

12  II.     PLAINTIFFS' CLAIMS ARE RIPE FOR REVIEW.

13         Echoing its standing arguments, CEQ contends that this case is not ripe because Plaintiffs

14  do not challenge a specific application of the Final Rule.  Fed. Br. at 10–11.  CEQ focuses on

15  prudential ripeness, a doctrine that seeks to prevent courts from getting involved too early in

16  abstract policy disagreements.  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).  The

17  prudential ripeness doctrine serves as a limitation on the timing of judicial review, not a

18  retraction of the broad rights to obtain judicial review established in the APA, *id.* at 140.  In fact,

19  courts have questioned the applicability of the prudential ripeness doctrine and found it

20  discretionary where plaintiffs meet the requirements for standing.  *Fowler v. Guerin*, 899 F.3d

21  1112 (9th Cir. 2018). Under either theory, Plaintiffs' challenges to the Final Rule are ripe.

22         A.      Constitutional Ripeness

23         Plaintiffs' claims are ripe under Article III because, as discussed above, they have

24  demonstrated injury-in-fact.  *See Bishop Paiute Tribe v. Inyo Cnty.,* 863 F.3d 1144, 1153–54 (9th

25  PLAINTIFFS' OPPOSITION TO
26  MOTIONS TO DISMISS  - 24 -

*Earthjustice*
810 Third Avenue, Suite 610
Seattle, WA  98104-1711
(206) 343-7340

1    Cir. 2017).  "Constitutional ripeness … coincides squarely with standing's injury in fact prong."

2    *Id.* at 1153 (internal quotation marks omitted); *see also Susan B. Anthony List,* 573 U.S. at 157

3    n.5.  Because Plaintiffs have established Article III standing for the reasons discussed above, this

4    case is ripe.

5           B.    Prudential Ripeness

6           Although this Court has "discretion[]" to consider whether plaintiffs' claims are also

7    prudentially ripe, *Bishop Paiute Tribe*, 863 F.3d at 1154, the Ninth Circuit has called prudential

8    ripeness a "disfavored judge-made doctrine that 'is in some tension with [the Supreme Court's]

9    recent reaffirmation … that a federal court's obligation to hear and decide cases within its

10   jurisdiction is virtually unflagging.'"  *Fowler*, 899 F.3d at 1116 n.1 (quoting *Susan B. Anthony*

11   *List*, 573 U.S. at 167) (alteration in original).  This Court has "previously declined to reach

12   prudential ripeness when constitutional ripeness is satisfied," *California ex rel. Becerra v.*

13   *Sessions*, 284 F. Supp. 3d 1015, 1031 (N.D. Cal. 2018), and should do the same here.

14          If the Court decides otherwise, however, Plaintiffs satisfy the three factors set forth in

15   *Abbott Laboratories v. Gardner* and *Ohio Forestry Association v. Sierra Club*: whether judicial

16   intervention would inappropriately interfere with further administrative action; whether the

17   courts would benefit from further factual development of the issues presented; and whether

18   delayed review would cause hardship to the plaintiffs.  *Ohio Forestry Ass'n v. Sierra Club*, 523

19   U.S. 726, 733 (1998).  The first two factors are sometimes combined into a single inquiry,

20   termed the "fitness of the issues for judicial decision."  *See Nat'l Park Hospitality Ass'n v. Dep't*

21   *of Interior*, 538 U.S. 803, 808 (2003) (citing *Abbott Labs.,* 387 U.S. at 149).  Courts have also

22   held that if claims are found to be "fit for review," the ripeness inquiry is at an end.  *See General*

23   *Elec. Co v. Envtl. Prot. Agency*, 290 F.3d 377, 381 (D.C. Cir. 2002) ("no purpose is served" by

24   analyzing hardship once court determines that issue is fit for review).

25   PLAINTIFFS' OPPOSITION TO
26   MOTIONS TO DISMISS  - 25 -

1                    *1.      Plaintiffs' claims are fit for judicial decision.*

2          Regulatory revisions issued by CEQ are "final agency actions."  5 U.S.C. § 551

3   (definition of final agency action includes rules).  In *Ohio Forestry*, the Supreme Court

4   articulated a distinction between procedural as opposed to substantive facial challenges to

5   regulations.  The Court explained that "a person with standing who is injured by a failure to

6   comply with the NEPA procedure may complain of that failure at the time the failure takes place,

7   for the claim can never get riper."  *Ohio Forestry*, 523 U.S. at 737 (emphasis added).  The Ninth

8   Circuit has similarly adopted the rule that a NEPA claim is ripe when the violation occurs and

9   that site-specific action is "irrelevant to the ripeness of an action raising a procedural injury."

10  *Citizens I*, 341 F.3d at 977; *Kern v. BLM*, 284 F.3d 1162, 1070–71 (9th Cir. 2002) ("[i]f there

11  was an injury under NEPA, it occurred when the allegedly inadequate EIS was promulgated").

12         In *Citizens for Better Forestry v. U.S. Dep't of Agric.,* 632 F. Supp. 2d 968 (N.D. Cal.

13  2009) (*Citizens III*), this Court confirmed that plaintiffs' challenge to an agency's attempt to cure

14  the NEPA deficiencies identified in *Citizens I* was ripe.  The court explained that plaintiffs'

15  lawsuit was not barred by the Supreme Court's intervening *Summers* precedent because

16             the present case involves a challenge, not to the substance of any particular
               regulation, but to the Forest Service's failure to follow proper procedures when
17             promulgating the [Forest Planning] Rule.  Citizens has already suffered the
               procedural injury that forms the basis of its standing; it was injured by the
18             USDA's failure to take a hard look at the environmental consequences of its
               action.  Unlike in *Summers*, where the injury was the deprivation of Earth Island
19             Institute's opportunity to provide comments on and subsequently appeal a specific
               decision, here the injury will not become more concrete when the Rule is applied
20             to an LRMP or a site-specific plan.

21  632 F. Supp. 2d at 979 (*citing Summers*, 555 U.S. 488); *see id.* (plaintiffs submitted numerous

22  detailed declarations that were "not lacking in specificity, as was the declaration in *Summers*").

23         Using the same injury and ripeness analysis as the Supreme Court in *Ohio Forestry* for

24  NEPA, the Ninth Circuit has found alleged violations of the ESA's procedural consultation

25  PLAINTIFFS' OPPOSITION TO
26  MOTIONS TO DISMISS  - 26 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

requirements ripe for review.  In *Cottonwood*, the Ninth Circuit explained that the Supreme

Court's holding in *Ohio Forestry* regarding the fitness of NEPA claims for judicial review

applied likewise to challenges to the failure to conduct ESA consultation, noting that "the

imminence of project-specific implementation is irrelevant to the ripeness of an action raising a

procedural injury."  789 F.3d at 1084 (*citing Citizens I*, 341 F.3d at 977); *Kraayenbrink*, 632

F.3d at 486.  Tracking this precedent, this Court explained in *Shearwater* that "the fact that

Plaintiffs are challenging programmatic management direction without also challenging an

implementing project that will cause discrete injury does not deprive them of Article III standing.

Plaintiffs are not required to challenge directly any specific project because their procedural

injury was complete when FWS failed to conduct further NEPA analysis or failed to engage in

ESA consultation."  2015 WL 4747881, at *13 (internal citations omitted).

Plaintiffs' substantive claims—that the revised regulations contravene NEPA, the ESA,

and the APA as a matter of law—involve questions of statutory interpretation and are based only

on the now-closed administrative record.  These claims cannot be further informed by future

factual developments.  Where a party challenges a regulation's conformity with its authorizing

statute, "[t]he question before [the Court] is purely one of statutory interpretation that would not

benefit from further factual development of the issues presented."  *Whitman v. Am. Trucking

Ass'ns*, 531 U.S. 457, 479 (2001); *see also State of California ex rel. Water Resources Bd. v.

FERC*, 966 F.2d 1541, 1562 (9th Cir. 1992) ("It is difficult to postulate an issue more proper for

judicial decision than that of the statutory authority of an administrative agency"); *Cement Kiln

Recyling Coal. v. Envtl. Prot. Agency*, 493 F.3d 207, 215 (D.C. Cir. 2007) ("It is well established

that claims that an agency's action is arbitrary and capricious or contrary to law present purely

legal issues").

PLAINTIFFS' OPPOSITION TO
MOTIONS TO DISMISS  - 27 -

The purely legal nature of this case distinguishes it from cases cited by CEQ, particularly the Supreme Court's opinion in *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), which CEQ characterizes too broadly as meaning that all challenges to regulations must fail on ripeness grounds. Fed. Br. at 11. In this Circuit, "[i]n spite of the *Lujan* rule, we have found purely legal facial challenges of regulations to be ripe." *Ctr. for Biological Diversity v. Kempthorne*, 588 F.3d 701, 708 (9th Cir. 2009) (collecting cases). Other cases cited by CEQ (Fed. Br. at 11–13) either do not address challenges to final regulations, *Nat'l Park Hosp. Ass' v. Dep't of Interior*, 538 U.S. 803 (2003), or involve chains of events too extenuated for regulations to be applied, *Reno v. Catholic Social Servs.*, 509 U.S. 43, 58–59 (1999). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) ("A causal chain does not fail simply because it has several 'links,' provided those links are not hypothetical or tenuous" (internal quotation marks and citation omitted).

In *Habeas Corpus Resource Center v. U.S. Department of Justice*, 816 F.3d 1241, 1247 (9th Cir. 2016), relied on by CEQ (at 13), petitioners alleged that "vagueness" in the challenged regulations prevented them "from making reasonable predictions as to whether and how the Attorney General" would conduct the certification process at issue. 816 F.3d at 1246. Here, by contrast, the Final Rule violates NEPA in several ways, including by reducing the scope of actions to which NEPA applies and eliminating consideration of entire categories of potential impacts. First Amended Complaint ¶¶211, 234, 236. These errors, among others, are "complete" because CEQ "rendered [its] last word on the matter" when it published the Final Rule in the Federal Register. *Cottonwood*, 789 F.3d at 1084 (internal quotation marks omitted).

While CEQ and other federal agencies will apply and use the new regulations now and in the future, such future factual developments have no bearing on the claims in this case. This is a

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

1  textbook instance where "further factual development will not render more concrete" the issues

2  presented for judicial resolution.  *W. Oil & Gas Ass'n v. Envtl. Prot. Agency*, 633 F.2d 803, 808

3  (9th Cir. 1980) (challenge to EPA regulation ripe because it was EPA's "last word" on subject);

4  *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) (facial challenge to

5  election procedures justiciable where application would not assist judicial inquiry); *Nat'l Ass'n*

6  *of Homebuilders v. Army Corps of Eng'rs*, 417 F.3d 1272, 1282 (D.C. Cir. 2005) (arbitrary and

7  capricious challenge to regulations presents ripe legal issues).  The question for this Court is

8  whether the Final Rule as promulgated complies with NEPA, the ESA, and the APA.  No

9  additional factual developments can inform the Court's resolution of this fundamental question,

10  because the Final Rule is the consummation of the agency's decisionmaking process.

11      Nor will this Court's review "inappropriately interfere with future administrative action."

12  *Ohio Forestry*, 523 U.S. at 733.  CEQ takes a stab at arguing that judicial review now "would

13  interfere in numerous agencies' environmental review processes."  Fed. Br. at 17–18.  In

14  *Cottonwood*, the Ninth Circuit rejected a similar argument, finding ripe a claim that the agency

15  had failed to reinitiate ESA consultation because there was no further process to occur for the

16  challenged action.  Here, similarly, challenges to CEQ's procedural failures, including an

17  identical failure to consult claim, are ripe because there can be no further process.  The Final

18  Rule is "at an administrative resting place," *Citizens I*, 341 F.3d at 977, and ripe for review.

19      CEQ also mischaracterizes Plaintiffs' challenge as pre-enforcement review.  That

20  framework is simply inapplicable.  As the *Habeas Corpus* court explained, "pre-enforcement

21  review" applies only where the challenge is to "regulations anticipating that an administrative

22  agency will … apply those regulations in a manner that will harm [a party's] interests," and the

23  party "may have to choose between complying with the regulations immediately or facing

24

25  PLAINTIFFS' OPPOSITION TO
26  MOTIONS TO DISMISS  - 29 -

penalties." *Habeas Corpus*, 816 F.3d at 1252.  This is not a case where Plaintiffs must choose between compliance and risking penalties.  Nor is it a case challenging a final rule that may or may not be enforced in any particular matter.  Instead, this case challenges the legal flaws in the promulgation and content of regulations themselves.

In short, Plaintiffs' claims are purely legal, and fully reviewable based on the existing administrative record.  Nothing would be gained by viewing these issues through the lens of a specific application of the Final Rule because the regulations must stand or fall on their own merit, without regard to the nuances of future actions of CEQ or other federal agencies' implementation of the Final Rule.  Each claim is fit for judicial decision and ripe for review.

2.       *Plaintiffs will suffer hardship if review is delayed.*

Since the issues are fit for review and no further factual developments are needed to resolve the claims, hardship is irrelevant as it operates only to tip the balance in favor of judicial review when some interests favor delay.  *See Nat'l Ass'n of Homebuilders v. Army Corps of Eng'rs*, 440 F.3d 459, 465 (D.C. Cir. 2006); *Municipality of Anchorage v. U.S.*, 980 F.2d 1320, 1325–26 (9th Cir. 1992).

Yet Plaintiffs will suffer hardship if the Court delays review.  The challenged regulations are being implemented now by CEQ and other federal agencies, compounding plaintiffs' harms stemming from the unlawful promulgation of the Final Rule.  As discussed above, the Final Rule directs all federal agencies to revise their agency-specific NEPA regulations to conform to the CEQ Final Rule, restricting agencies from conducting reviews in more detail and depth than authorized in the Final Rule.  The Final Rule explicitly states that if existing agency NEPA regulations are inconsistent, the Final Rule controls.  85 Fed. Reg. at 43,373 (codified at § 1507.3(a), (b).  Other analyses relying on the Final Rule are underway, *supra* fn. 12, 13 and accompanying text, and the harm from the Rule's specific application will have begun long

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

before any final decisions are announced as the agencies continue ongoing reviews.  While CEQ protests that "no one can say with any certainty" where the Final Rule will be applied, Fed. Br. at 18, that's simply untrue: the Final Rule will be applied to all future federal agency actions. There is nothing speculative about this Court's review of the Final Rule itself, and "[w]ithholding review would exacerbate the hardship that already exists."  *Wash. Toxics Coal.*, 457 F. Supp. 2d at 1175.[16]

Moreover, for those federal actions that the Final Rule exempts from NEPA procedures, there will never be a moment when Plaintiffs know the Final Rule has been applied.  This is existing and ongoing harm that reinforces the need for judicial resolution now, not in some indeterminate future.  Indeed, Plaintiffs do not have to wait for greater injury to occur before challenging the Final Rule.  *See Ctr. for Biological Diversity v. Kempthorne*, 588 F.3d at 709 ("[h]ardship may result from past or imminent harm caused by the agency's adoption to the regulations"); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004) (requiring only that the protected concrete interest be "threatened").

CONCLUSION

For the reasons discussed above, Plaintiffs meet the interest, injury, causation, and redressability requirements for standing and the standards for ripeness in this challenge to the Final Rule itself.  Plaintiffs respectfully ask the Court to deny the Motions to Dismiss filed by CEQ and Defendant-Intervenors.

---

[16] Review now could forestall a parade of site-specific, as-applied challenges in various courts that might result in inconsistent rulings and certainly waste judicial resources.  Here, Plaintiffs "are taking advantage of … their only opportunity to challenge [the regulations] on a nationwide … basis," rendering the dispute "ripe for adjudication."  *Lockyer II*, 575 F.3d at 1011.

PLAINTIFFS' OPPOSITION TO
MOTIONS TO DISMISS  - 31 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*

1     DATED this 15th day of January, 2021.

2                                        Respectfully submitted,

3                                        *s/ Kristen L. Boyles*
                                         KRISTEN L. BOYLES (CSBA # 158450)
4                                        JAN E. HASSELMAN (WSBA # 29017)
                                         *[Admitted Pro Hac Vice]*
5                                        EARTHJUSTICE
                                         810 Third Avenue, Suite 610
6                                        Seattle, WA  98104
                                         (206) 343-7340
7                                        kboyles@earthjustice.org
                                         jhasselman@earthjustice.org
8
                                         SUSAN JANE M. BROWN (OSBA # 054607)
9                                        *[Admitted Pro Hac Vice]*
                                         WESTERN ENVIRONMENTAL LAW CENTER
10                                       4107 N.E. Couch St.
                                         Portland, OR 97232
11                                       (503) 914-1323
                                         brown@westernlaw.org
12
                                         *Attorneys for Plaintiffs*
13
                                         GREGORY C. LOARIE (CSBA # 215859)
14                                       EARTHJUSTICE
                                         50 California Street, Suite 500
15                                       San Francisco, CA 94111
                                         (415) 217-2000
16                                       gloarie@earthjustice.org

17                                       *Local Counsel for Plaintiffs*

18

19

20

21

22

23

24

25
PLAINTIFFS' OPPOSITION TO
26   MOTIONS TO DISMISS  - 32 -

CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.

Dated: January 15, 2021          *s/ Kristen L. Boyles*
                                 KRISTEN L. BOYLES (CSBA # 158450)

PLAINTIFFS' OPPOSITION TO
MOTIONS TO DISMISS  - 33 -

*Earthjustice*
*810 Third Avenue, Suite 610*
*Seattle, WA  98104-1711*
*(206) 343-7340*